# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

Nº 16-CV-4209 (JFB) (AKT)

———————————————

## BENJAMIN DUBIN AND BYRON ALSTON,
### ON BEHALF OF THEMSELVES AND ALL OTHERS SO SIMILARLY SITUATED,

Plaintiffs,

VERSUS

## THE COUNTY OF NASSAU, THE NASSAU COUNTY LEGISLATURE, AND THE NASSAU COUNTY TRAFFIC AND PARKING VIOLATIONS AGENCY,

Defendants.

———————————————

### MEMORANDUM AND ORDER
September 27, 2017

———————————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Benjamin Dubin ("Dubin") and Byron Alston ("Alston," and with Dubin, "plaintiffs") bring this putative class action against defendants the County of Nassau (the "County"), the Nassau County Legislature (the "Legislature"), and the Nassau County Traffic and Parking Violations Agency (the "TPVA")[1] (collectively, "defendants") alleging (1) a cause of action for violations of various federal constitutional rights[2]

pursuant to 42 U.S.C. § 1983 ("Section 1983"); (2) a claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and (3) eighteen claims under New York State law for myriad constitutional and statutory infractions.[3] The gravamen of plaintiffs' Second Amended Complaint ("SAC") is that defendants have unlawfully enacted and enforced a local ordinance known as the Drivers' Responsibility Fee (the "DRF"), Nassau Cty. Ordinance 190-2012.[4] The DRF allegedly imposes a

---

[1] At oral argument on the instant motion, plaintiffs conceded that the TPVA is a non-suable entity under New York State law. Accordingly, the Court dismisses the TPVA from this action.

[2] Specifically, plaintiffs allege bill of attainder, procedural due process, substantive due process, unjust takings, equal protection, excessive fines, and double jeopardy violations by defendants.

[3] Plaintiffs also consented to dismissal of Count 20 of the SAC brought pursuant to Article 78 of the New

York Civil Practice Law and Rules, N.Y. C.P.L.R. § 7801 et seq. The Court, therefore, dismisses that claim.

[4] Nassau County Ordinance 190-2012 amended Nassau County Ordinance 16-2011, which is the provision cited in the SAC, and it appears to be the operative ordinance governing the DRF. See Guthart v. Nassau Cty., 52 N.Y.S.3d 821, 824 (Sup. Ct. Nassau Cty. 2017).

mandatory payment of $45 on all motorists who have been issued tickets or citations and received a final disposition other than "not guilty."

Defendants now move to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6)[5] on the following grounds: (1) the *Rooker-Feldman* doctrine bars plaintiffs' claims; (2) the Court should abstain from adjudicating the Section 1983 claim due to ongoing New York State court proceedings; (3) the Court should decline jurisdiction over plaintiffs' second cause of action for a declaratory judgment; (4) all of plaintiffs' federal claims under Section 1983 fail to state a cause of action; and (5) in the absence of a viable federal claim, the Court should not exercise supplemental jurisdiction over plaintiffs' New York State law claims.

As an initial matter, the Court concludes that (1) the *Rooker-Feldman* does not bar any claims in this case, and (2) abstention is unwarranted on the federal claims. On the merits, the Court finds that plaintiffs have not pled a plausible cause of action based on their bill of attainder, procedural due process, substantive due process, unjust takings, equal protection, and double jeopardy allegations. However, the Court denies the motion to dismiss the excessive fines claim under Section 1983 on the ground raised by defendants—namely, that the DRF cannot be punitive because it is not imposed following a criminal or quasi-criminal proceeding and is assessed to defray administrative costs. Because it was not raised by defendants, the Court does not reach the second issue with respect to the excessive fines claim—that is, whether a $45 fine can be unconstitutionally excessive.

Accordingly, because a federal claim has survived defendants' motion, the Court retains supplemental jurisdiction over plaintiffs' state law claims and will not dismiss them at this stage. Thus, for the reasons set forth below, the Court grants defendants' motion in part and denies it in part.

## I. BACKGROUND

### A. Factual Background

The Court takes the following facts from the SAC. (ECF No. 23.) The Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiffs as the non-moving party.

#### 1. The Parties

Plaintiffs Dubin and Alston are both New York State residents and were respectively assessed a DRF on September 4, 2015 and July 7, 2016. (SAC at ¶¶ 7-8.) The County is a local New York government governed by the Legislature, which established the TPVA and enacted ordinances related to the DRF. (*Id*. at ¶¶ 9-10.)

#### 2. Nature of the Action

This case arises out of "defendants' unlawful assessment of [the DRF] against motorists who have had tickets and/or citations dismissed by the" TPVA court. (*Id*. at ¶ 1.) Plaintiffs allege that the DRF mandates a $45 payment by all motorists who receive citations or tickets and a "final disposition other than not guilty," and although "characterized as a 'fee,' this charge is in fact a non-discretionary penalty imposed merely for having been issued a ticket, and

---

[5] As discussed *infra*, defendants argue that there is no subject matter jurisdiction over this action;

accordingly, the Court will also treat this motion as one to dismiss pursuant to Rule 12(b)(1).

the TPVA Court must charge the penalty even when the tickets against the individuals have been dismissed . . . ." (*Id*. at ¶ 2; *see also id*. at ¶ 28 ("This is a legislative penalty, and is not based on an actual adjudication by any Court after a hearing or other opportunity to be heard.").)

The SAC further states that the "TPVA has created a chilling-effect to [sic] individual citizens who come before that Court, as the[] only way that the[y] can dispute the penalty is to go to trial, which requires time, effort, and costs just to dispute the DRF." (*Id*. at ¶ 4.) As a result, "only approximately 1% of individuals who are issued tickets elect to proceed to trial," notwithstanding that "for those individuals whom [sic] make an appearance before the TPVA Court, over 40% of all tickets are dismissed." (*Id*. at ¶¶ 4, 30.) In sum, plaintiffs assert that the DRF "has nothing to do with 'administrative costs' relating to issuing tickets/citations" but is rather a punishment imposed "against individuals for simply being issued a ticket without any findings of fact, nor proof of any actual violations," and "irrespective of whether or not they are actually guilty of any offense or violation . . . ." (*Id*. at ¶¶ 32-34.) Moreover, the SAC alleges that the DRF's underlying aim is to generate revenue for the County to help defray budget deficits. (*Id*. at ¶¶ 34-40.)

3. Plaintiffs' Alleged Injuries

On or about July 31, 2015, Dubin was issued a ticket with an appearance date of September 11, 2015 for a defective brake light on his vehicle. (*Id*. at ¶¶ 16-17, Exh. A.) After Dubin repaired the brake light and had his vehicle inspected by a County police officer, the TPVA dismissed the ticket but

nevertheless assessed a DRF.[6] (*Id*. at ¶¶ 18-20, Exhs. B-C.)

Alston appeared before the TPVA on or about July 7, 2016 regarding seven outstanding tickets or citations. (*Id*. at ¶ 23, Exh. F.) He pled guilty to four offenses, and the TPVA dismissed the remaining three tickets/citations. (*Id*.) The TPVA assessed Alston a DRF for each dismissed ticket, as well as a "deferred payment fee" of $15 per ticket, for an approximate total cost of $180. (*Id*. at ¶ 24.)

Among other relief, plaintiffs seek, on behalf of themselves and a class of other similarly situated individuals, a declaration that the "DRF violates the Constitutional protections of the Fifth, Eighth and Fourteenth Amendments, and as well as [sic] other [federal] Constitutional Protections"; an injunction enjoining defendants from imposing the DRF; and reimbursement of all DRF charges and associated expenses. (*Id*. at ¶ 6.)

B. Procedural Background

Dubin commenced this action on July 29, 2016 (ECF No. 3), and plaintiffs filed an amended complaint on October 20, 2016 (ECF No. 12) and the SAC on November 30, 2016 (ECF No. 23). Defendants moved to dismiss the SAC on January 13, 2017 (ECF No. 25) and provided supplemental legal authority in support of their motion on February 3, 2017 (ECF No. 28). Plaintiffs filed their opposition to the motion and defendants' supplemental letter on February 27, 2017 and March 2, 2017, respectively (ECF Nos. 30-31); and defendants replied on March 20, 2017 (ECF No. 33).

---

[6] At that time, the DRF required Dubin to pay $30. (*Id*. at ¶ 19; *see also id*. at ¶ 2 n.2.)

The Court heard oral argument on March 23, 2017 (ECF No. 34), and plaintiffs subsequently filed their own letter providing supplemental legal authority in support of their opposition on May 27, 2017 (ECF No. 38). The Court has fully considered all of the parties' submissions and arguments.

## II. STANDARDS OF REVIEW

Relevant here are Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which respectively govern motions to dismiss for lack of subject matter jurisdiction and motions to dismiss for failure to state a claim. The following standards of review are applicable to motions brought under those provisions.

### A. Subject Matter Jurisdiction

To defeat a motion to dismiss brought under Rule 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In resolving this issue, the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Additionally, the court "may refer to evidence outside the pleadings" to resolve the jurisdictional issue. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

### B. Failure to State a Claim

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

*See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of heir contents and they were integral to plaintiffs' claim.").

## III. DISCUSSION

Defendants argue that the Court should dismiss the SAC because (1) the Court lacks jurisdiction under *Rooker-Feldman*; (2) the Court should abstain from considering the Section 1983 claim because it implicates pending New York State court proceedings; (3) the Court should decline jurisdiction over plaintiffs' declaratory judgment cause of action because it is dependent on plaintiffs' state law claims; and (4) plaintiffs' Section 1983 claim fails to state a cause of action because the SAC does not plausibly plead a violation of any federal constitutional right. Further, in the absence of a viable federal cause of action, defendants contend that the Court should decline supplemental jurisdiction over plaintiffs' remaining state law claims.

For the reasons set forth below, the Court concludes that *Rooker-Feldman* does not bar adjudication of this matter and that abstention on the Section 1983 and declaratory judgment claims is unwarranted. The Court further finds that plaintiffs' allegations do not plausibly plead a bill of attainder, procedural due process, substantive due process, unjust takings, equal protection, or double jeopardy violation under Section 1983. However, the Court denies the motion to dismiss the excessive fines claim under Section 1983 on the ground raised by defendants—namely, that the DRF cannot be punitive because it is not imposed following a criminal or quasi-criminal proceeding and is assessed to defray administrative costs. Because it was not raised by defendants, the Court does not reach the second issue with respect to the excessive fines claim—that is, whether a $45 fine can be unconstitutionally excessive. Thus, because a federal claim survives defendants' motion, the Court retains supplemental jurisdiction over the pendant state law claims and will not dismiss them at this stage. Accordingly, defendants' motion is granted in part and denied in part.

### A. *Rooker-Feldman*

#### 1. Applicable Law

The *Rooker-Feldman* doctrine arises from two decisions issued by the United

States Supreme Court: *Rooker v. Fiduciary Trust Company*, 263 U.S. 413 (1923); and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It stands for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970); *accord Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 84 (2d Cir. 2005) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."). Though this doctrine was once improperly equated with that of *res judicata*, *see Moccio v. N.Y. State Office of Ct. Admin.*, 95 F.3d 195, 199-200 (2d Cir. 1996), the Supreme Court has clarified that *Rooker-Feldman* is jurisdictional in nature, whereas *res judicata* deals with preclusion, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter.") (citing Fed. R. Civ. P. 8(c) (listing *res judicata* as an affirmative defense)).

In *Hoblock,* the Second Circuit carefully reviewed the *Rooker-Feldman* doctrine in light of the Supreme Court's *Exxon Mobil* decision. *See Hoblock*, 422 F.3d at 83-92. Noting that *Exxon Mobil* had narrowed the scope of the *Rooker-Feldman* doctrine, the Second Circuit ruled that its application "'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id*. at 85 (quoting *Exxon Mobil*, 544 U.S. at 284). Thus, the Second Circuit set forth four requirements for *Rooker-Feldman* to apply: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* (footnote omitted). The Second Circuit has classified the first and fourth requirements as "procedural" and the second and third requirements as "substantive." *See id.*

2. Analysis

Defendants argue that *Rooker-Feldman* applies here because (1) "[p]laintiffs are challenging the fees incurred by them in appearing before and having their potential liability adjudicated before TPVA, an arm of the Nassau County District Court"; (2) plaintiffs' court-imposed DRF liability arose prior to commencement of the instant action; and (3) plaintiffs ask this Court to review and reject the TPVA's findings. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss Second Am. Compl. ("Defs.' Br."), ECF No. 25-4, at 5.) The Court disagrees.

First, plaintiffs are not the quintessential "state court losers" to whom *Rooker-Feldman* pertains. Rather than litigating a state court proceeding and receiving an unfavorable judgment, plaintiffs allege that the TPVA dismissed their tickets or citations without a determination that they were guilty of any infraction. (*See* SAC at ¶¶ 2, 19-20, 24, 28.) Termination of a state court action without an adverse disposition is not a loss for *Rooker-Feldman* purposes. *See Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009) ("We cannot say that [dismissal of the plaintiff's state family court proceeding] amount[ed] to a state-court *loss* for purposes of the *Rooker-Feldman* doctrine. Although there was no final adjudication in plaintiff's favor, there was also no final 'order of disposition' removing her child, and plaintiff secured the reversal of the one form of interlocutory relief entered against her. The

*Rooker-Feldman* doctrine, therefore, does not bar plaintiff's claims, as she did not 'lose' in state court." (citations omitted)); *see also V.S. v. Muhammad*, 595 F.3d 426, 430 (2d Cir. 2010) (same); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 718 (S.D.N.Y. 2012) (holding that *Rooker-Feldman* did not bar Section 1983 claims stemming from a criminal prosecution because "the plaintiffs succeeded in having the state court indictments against them dismissed, and thus there was no 'extant and controlling' judgment with continuing 'legal effect' in their case" (citation omitted)).

Moreover, plaintiffs claim that imposition of the DRF is a non-discretionary and non-appealable legislative mandate. (SAC at ¶ 58 ("The individual motorist cannot dispute the DRF before the TPVA Court whatsoever, the TPVA judges have no discretion not to impose the DRF, the motorists are not provided a trial on the DRF itself, and there is no appeals process for the DRF." (citing *People v. Stamos*, 51 Misc. 3d 136(A), 38 N.Y.S.3d 832 (App. Term. 2016) (holding that the imposition of a $30 fee by the TPVA following dismissal of a charge of operating an unregistered motor vehicle was not reviewable on appeal because "the $30 fee here was not made in conjunction with a judgment of conviction or sentence and does not come before this appellate court upon an appeal from a judgment of conviction"))).) Under such circumstances, the "narrow rule" of *Rooker-Feldman* does not apply. *See Green*, 585 F.3d at 103 ("Here, however, plaintiff brings a § 1983 action only after the Family Court proceedings were dismissed without a final order of disposition. Her action, moreover, complains only of injuries caused by a state-court order that was

interlocutory, unappealable, and effectively reversed by a superseding order.").

Finally, as the Supreme Court recognized in *Feldman*, its namesake doctrine does not bar federal adjudication of a general constitutional challenge to a state law or rule. *See* 460 U.S. at 482-85 (distinguishing "between general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission" and holding that a federal district court has jurisdiction over the former claim); *see also Feng Li v. Rabner*, 643 F. App'x 57, 59 (2d Cir. 2016) ("As to the court's *Rooker-Feldman* ruling, this doctrine does not apply to Li's challenge to the constitutionality of the state court rule."). In other words, as the Court emphasized in another case, "[i]f a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (brackets and citations omitted). Thus, the Supreme Court found in *Skinner* that *Rooker-Feldman* did not preclude a constitutional challenge to a Texas statute governing post-conviction DNA testing, notwithstanding that a state court had previously found that the petitioner was not entitled to testing under that law. *Id.* (finding that "Skinner does not challenge the adverse [state court] decisions themselves; instead, he targets as unconstitutional the Texas statute they authoritatively construed," and holding that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action" (citing *Feldman*, 460 U.S. at 487; *Exxon*, 544 U.S. at 286)). Likewise, plaintiffs are not contesting a state court's interpretation or application of the DRF;[7]

---

[7] Further, as noted, plaintiffs contend that the DRF is compulsory in every case other than those that receive a "not guilty" disposition. The Court finds *Rooker-*

*Feldman* particularly inapplicable based on those allegations because plaintiffs are not seeking review of an independent determination or judgment by a state

instead, they assert that the County ordinance authorizing the DRF is itself unlawful.  (*See, e.g.*, SAC at ¶ 6.)  Thus, this Court has subject matter jurisdiction over plaintiffs' claims because they are independent of any state court judgment against them.  *See McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006) ("None of these claims assert an injury caused by the state court judgments; Plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law.  Instead, Plaintiff asserts *independent claims* that . . . a state statute is vague and overbroad."); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010) (Chin, J.) (holding that *Rooker-Feldman* did not apply because the plaintiffs sought, "*inter alia*, declaratory relief that defendants violated the law and injunctive relief via notice to putative class members that is independent of the state-court judgments"); *McCloud v. Mairs*, No. 12 CV 2556 SLT LB, 2014 WL 9880043, at *4 (E.D.N.Y. Oct. 24, 2014) ("As plaintiff complains only of defendants' actions, not those of the state court, the second prong of the *Rooker-Feldman* doctrine is not met." (citing *Morrison v. City of New York*, 591 F.3d 109, 112 (2d Cir. 2010))), *report and recommendation adopted*, 2015 WL 3607565 (E.D.N.Y. June 2, 2015).

In sum, *Rooker-Feldman* does not require dismissal of this case for lack of subject matter jurisdiction because the SAC alleges (1) that plaintiffs did not lose in state court; (2) that the DRF is non-discretionary and non-appealable and, thus, that plaintiffs are not seeking federal review of a state court

decision; and (3) independent constitutional claims against the law authorizing the DRF.

B.  Abstention

Defendants advance two abstention arguments in support of their motion to dismiss.  First, they contend that, under *Younger v. Harris*, 401 U.S. 37 (1971), the Court should decline subject matter jurisdiction over plaintiffs' Section 1983 claim because there are ongoing state court proceedings.  Second, defendants assert that the Court should abstain from adjudicating the second cause of action for a declaratory judgment pursuant to *Railroad Commission v. Pullman Company*, 312 U.S. 496 (1941), because interpretation of the DRF depends on unsettled New York State law.  As discussed below, the Court disagrees with both contentions.

1.  Applicable Law

As a threshold matter, "abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction."  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  "The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction," and "the balance is heavily weighted in favor of the exercise of jurisdiction."  *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (alterations and citations omitted).

Under *Younger* abstention, "federal courts should generally refrain from

---

court.  *See Hoblock*, 422 F.3d at 84 (under *Rooker-Feldman*, "[f]ederal district courts lack jurisdiction

over suits that are, in substance, appeals from state-court judgments").

enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). In *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), the Supreme Court "clarified that district courts should abstain from exercising jurisdiction only in three 'exceptional circumstances' involving (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint*, 134 S. Ct. at 591), *cert. denied*, 136 S. Ct. 2469 (2016). "[T]hese three 'exceptional' categories . . . define *Younger*'s scope."[8] *Sprint*, 134 S. Ct. at 591.

The *Pullman* doctrine permits a federal court to abstain from deciding a state law issue "when it appears that abstention may eliminate or materially alter the constitutional issue presented." *Ohio Bureau of Emp't Servs. v. Hodory*, 431 U.S. 471, 481 (1977); *see Pullman*, 312 U.S. 496. The policy served by such abstention is to "avoid the need to address difficult constitutional questions depend on the interpretation of state law in a situation where a decision on the ambiguous state law could not 'escape being a forecast rather than a determination' and might be 'supplanted by a controlling decision of a state court.'" *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004) (quoting *Pullman*, 312 U.S. at 499-500). The doctrine is an "extraordinary and

narrow exception" to a district court's duty to adjudicate the case before it. *Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959).

In the Second Circuit, *Pullman* abstention may be appropriate where three conditions are met: (1) the state statute is "unclear or the issue of state law [is] uncertain"; (2) "resolution of the federal issue depend[s] upon the interpretation to be given to the state law"; and (3) "the state law [is] susceptible of an interpretation that would avoid or modify the federal constitutional issue." *McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir. 1976); *see also Hartford Courant Co.*, 380 F.3d at 100; *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 594 (2d Cir. 1989).

2. Analysis

For the following reasons, the Court finds, in its discretion, that abstention is not warranted at this stage of the litigation under either *Younger* or *Pullman*.

a. *Younger* Abstention

Defendants argue the court should dismiss plaintiffs' Section 1983 claim pursuant to *Younger* because, although plaintiffs' TPVA adjudications have been resolved, the SAC "asserts causes of action on behalf of a putative class including all persons who have paid the fee from January 1, 2008 and the present. Thus, since these Plaintiffs' state proceedings are ongoing, this Court should decline" subject matter

---

[8] Prior to *Sprint*, the Second Circuit held that abstention under *Younger* is mandatory when: "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or federal

constitutional claims." *Spargo*, 351 F.3d at 75. However, the Supreme Court held in *Sprint* that these criteria are "not dispositive," but are rather "*additional* factors appropriately considered by the federal court before invoking *Younger*." 134 S. Ct. at 593.

jurisdiction over the federal claims in the SAC. (Defs.' Br. at 7.)

This argument is without merit. As plaintiffs note in their opposition, other courts have correctly held that the existence of an uncertified, putative class does not implicate abstention concerns. *See, e.g.*, *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 572-73 (S.D.N.Y. 2012) ("The defendant has not established a basis for *Colorado River* abstention at this stage of the litigation. The Court is not yet being asked to decide whether it is appropriate to certify the California subclass on whose behalf plaintiff Shen seeks to bring his claim, such that there would be a class action in New York" that is duplicative of a state court action.). Given the Supreme Court's admonition in *Sprint* that "[o]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States," 134 S. Ct. at 591 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)), the Court agrees with plaintiffs that, because the Court has not yet determined the nature and constituent members of the proposed class, it would be premature to conclude that resolving this action would necessarily interfere with ongoing state proceedings involving unidentified individuals.[9]

Moreover, as the Supreme Court has consistently held, the "pertinent inquiry [under *Younger*] is whether the state proceedings afford an adequate opportunity to raise the constitutional claims . . . ." *Moore v. Sims*, 442 U.S. 415, 430 (1979); *see also Sprint*, 134 S. Ct. at 591 (holding that whether a pending state court proceeding "provides an adequate opportunity to raise federal challenges" is a relevant "additional

factor[] appropriately considered by the federal court before invoking *Younger*" (brackets and citations omitted)); *Zablocki v. Redhail*, 434 U.S. 374, 380 n.5 (1978) ("[T]he District Court was correct in finding *Huffman* and *Younger* inapplicable, since there was no pending state-court proceeding in which appellee could have challenged the statute."). Thus, in *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Court found that *Younger* did not preclude injunctive relief in a Section 1983 case contesting a state statute governing preliminary hearings in criminal prosecutions because the "injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution," and thus, the district court's "order to hold preliminary hearings could not prejudice the conduct of the trial on the merits." *Id.* at 108 n.9; *see also Donohue v. Mangano*, 886 F. Supp. 2d 126, 141 (E.D.N.Y. 2012) ("*Younger* abstention does not apply when a plaintiff's federal claims cannot be presented in pending state proceedings." (citation omitted)).

Here, as already discussed, plaintiffs have alleged that the DRF is non-discretionary and non-appealable and, therefore, that there is no opportunity to challenge that statute on federal constitutional grounds before the TPVA or any state appellate tribunal. (*See, e.g.*, SAC at ¶ 58 (citing *Stamos*, 38 N.Y.S.3d 832).) In addition, plaintiffs do not seek to enjoin cases before the TPVA or any other New York State court; instead, they request an injunction barring defendants from imposing the *DRF* (*see* SAC at ¶ 6)—an act, plaintiffs further contend, that does not involve fact-finding or a merits determination by a state judge (*see id.* at ¶¶ 32-33). In other

---

[9] Of course, the Court may reconsider this issue at a later stage in the litigation if it becomes appropriate to do so. *See* Fed. R. Civ. P. 12(h)(3) ("If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

words, as in *Gerstein*, an order by this Court precluding enforcement of the DRF would not "prejudice the conduct of" TPVA proceedings concerning the underlying ticket or citation.[10]

Therefore, based on the allegations in the SAC, the Court concludes, in its discretion, that *Younger* abstention is not warranted with respect to plaintiffs' Section 1983 claim.

b. *Pullman* Abstention

Defendants also assert that the Court should decline jurisdiction over plaintiffs' second cause of action under the Declaratory Judgment Act because the SAC "request[s] the Court to determine New York Constitutional issues, as well as issues regarding whether the challenged ordinance is preempted, as a matter of state law, by NY Vehicle and Traffic Law, the NY Civil Rights Law, the NY Penal Law and the NY Criminal Procedures Law"; and "the Court is requested to decide whether the challenged ordinances are authorized under the NY Municipal Home Rule Law." (Defs.' Br. at 8.) In addition, defendants contend that resolution of plaintiffs' state law claims will dispose of the Section 1983 challenge because "[i]t is only after the [DRF is] declared invalid [under New York State law] that Plaintiffs' constitutional claims are made relevant." (Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss Second Am. Compl. ("Defs.' Reply Br."), ECF No. 33, at 5; *see also id*. at 3 ("[I]f there are no questions that the ordinances imposing the DRF are valid under state law, then it cannot be said that there was

a constitutional violation.").)    The Court disagrees.

As an initial matter, defendants mischaracterize the SAC. They argue that plaintiffs "make[] no allegation that the enactment of the [DRF] was in violation of federal law." (*Id*. at 3.) However, that contention is belied by nearly twenty pages of substantive claims asserting that the DRF infringes numerous federal constitutional rights (*see* SAC at ¶¶ 1-6, 28-92), as well as plaintiffs' specific request for "declaratory relief that the DRF violates the Constitutional protections of the Fifth, Eighth and Fourteenth Amendments, and as well as [sic] other Constitutional Protections" (*id*. at ¶ 6).

With respect to the *Pullman* factors, even assuming that this case satisfies the first criterion—that the DRF ordinance is "unclear or the issue of state law is uncertain"—it does not fulfill the second prong because resolution of plaintiffs' federal claims does not depend upon the Court's construction of New York State law. This Court addressed a similar issue in *Moore v. County of Suffolk*, 851 F. Supp. 2d 447 (E.D.N.Y. 2012), in which the plaintiffs sought a declaration that certain county and town laws were unconstitutional under federal law and an injunction enjoining their enforcement. In addition, the plaintiffs argued that New York State law preempted those local statutes. The Court found that "[r]esolution of the constitutional issues [did] not *depend* upon the Court's interpretation of the state law issue" because "[t]his Court's holding as to whether [New York State law] preempts the town and county laws has no bearing on the resolution of the constitutional issues." *Id*. at

---

[10] For purposes of its analysis, the Court assumes, *arguendo*, that TPVA adjudications fall into one of three *Sprint* categories. However, as discussed, such classification permits—but does not require— abstention; instead, a federal district court may

consider additional factors before invoking *Younger*, including whether the state proceeding at issue affords litigants an avenue for raising federal claims. *See Sprint*, 134 S. Ct. at 593.

457. It further cited *Canaday v. Koch*, 608 F. Supp. 1460 (S.D.N.Y. 1985), for the proposition that *Pullman*'s second factor "requires that the constitutional issue be logically dependent on resolution of the state law issue." *Id*. at 1467.

Likewise, in *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122 (2d Cir. 1995), the Second Circuit found that the district court abused its discretion in abstaining from plaintiff's claims that the defendants' refusal to enter into a contract with the plaintiff constituted a bill of attainder and violated the First and Fourteenth Amendments, as well as various New York State laws. The Court held that *Pullman* abstention was not warranted because the

> defendants [did] not explain[] how the federal issue presented in this case . . . could be mooted by any particular interpretation of the state regulations at issue. The defendants' alleged failure to comply with the procedural requirements set forth in N.Y. Gen. Mun. L. § 104-b and N.Y. Comp. R. and Regs. tit. 18, §§ 407.2, 407.10 has no bearing on the constitutional issue presented. Nor, finally, are we aware of a statutory construction which could cure the constitutional violations alleged by plaintiff.

*Id*. at 126-27 (citing *Williams v. Lambert*, 46 F.3d 1275, 1282 (2d Cir. 1995) (no interpretation of statute could avoid fact that plaintiff fell within class of people at whom statute was aimed)).

Here, whether or not the DRF is a valid enactment under New York State law or is preempted by other statutes does not vitiate plaintiffs' claims that the DRF, *inter alia*, is a bill of attainder or violates federal

procedural due process protections. *See Canaday*, 608 F. Supp. at 1467 ("Whether plaintiffs were denied equal protection of the laws is a question that may be decided independently of any decision as to plaintiffs' rights under state law. It is not logically necessary to decide the state law issues first, before reaching the constitutional claim; the constitutional claim is alternative to, rather than dependent upon, the state law claims."); *see also United Fence & Guard Rail Corp.*, 878 F.2d at 593, 596 (holding that abstention "policies are outweighed by countervailing concerns when a federal court is asked to consider claims involving important federal rights" and that the district court abused its discretion in abstaining under *Pullman* from considering a federal constitutional challenge to a state law because "the federal constitutional issues presented do not depend upon resolution of the state law issues"); *Donohue*, 886 F. Supp. at 140 ("*Pullman* is not applicable in the instant case because resolution of the federal issue—namely, the Contracts Clause in the United State[s] Constitution—does not depend on any construction of the state laws at issue."); *Sherman v. Town of Chester*, No. 01 CIV. 8884 (SAS), 2001 WL 1448613, at *3 (S.D.N.Y. Nov. 15, 2001) ("The resolution of the federal question does not 'depend' on the resolution of . . . whether the Town acted *ultra vires* under [New York State law] in enacting the Local Law . . . or [] whether the Town violated Sherman's property right under the State constitution. Instead, the federal claim turns on whether Sherman had a federally protectable property right in the permit." (internal citations omitted)). *Cf. Nov. Team, Inc. v. New York State Joint Comm'n on Pub. Ethics*, 233 F. Supp. 3d 366, 371 (S.D.N.Y. 2017) ("Regarding the second factor relevant to *Pullman* abstention, resolution of Plaintiffs' federal constitutional claims depends on the interpretation of the Advisory Opinion."), *appeal withdrawn*, No.

17-334 (2d Cir. May 17, 2017); *Zuffa, LLC v. Schneiderman*, No. 15-CV-7624 (KMW), 2016 WL 311298, at *6 (S.D.N.Y. Jan. 26, 2016) (holding that *Pullman* abstention was warranted because the "[p]laintiff's federal constitutional vagueness challenge depend[ed] on the interpretation of [the] state law, and the [the state law was] susceptible to interpretations that would resolve the statutory uncertainty and eliminate the federal constitutional issue"), *appeal withdrawn*, No. 16-535 (2d Cir. June 14, 2016).

Thus, defendants' reliance on *Guthart v. Nassau County*, 52 N.Y.S.3d 821 (Sup. Ct. Nassau Cty. 2017), is misplaced. (*See* Defs.' Feb. 3, 2017 Letter, ECF No. 28.) There, a New York State trial court found that imposing the DRF was a proper exercise of the County's power pursuant to New York Municipal Home Rule Law § 10 and New York Vehicle and Traffic Law § 1111-b(e). *Id*. at 824-25 ("[T]here is nothing in the language of [New York Vehicle and Traffic Law § 1111-b(e)] itself that abrogates the existing and long-standing authority holding that a municipality may impose fees reasonably related to the cost of administering and/or enforcing its own regulations and programs."); *see also id*. at 826 ("Nor can it be said that the cited charges cannot be imposed under the doctrine of preemption. Local governments have broad authority to enact legislation that promotes the welfare of their citizens, but cannot adopt local laws or ordinances that are inconsistent

with the New York State constitution or with any general State law."). Accordingly, the court dismissed the plaintiff's claims seeking a declaration that the DRF was invalid under New York State law and for unjust enrichment, fraud, and negligent misrepresentation. *Id*. at 827-28. That determination, however, does not vitiate plaintiffs' Section 1983 claim in this action because, as already discussed, the validity of the DRF under New York State law does not abrogate any potential federal constitutional violations.[11] Simply put, a local ordinance may comport with the substantive and procedural requirements of a state constitution and state statutes but nevertheless infringe federally-protected rights.[12] *See, e.g., Nelson v. Colorado*, 137 S. Ct. 1249, 1256 (2017) (holding that a Colorado statute violated the Due Process Clause). Further, the plaintiff in *Guthart*—unlike plaintiffs in this case—did not assert a Section 1983 cause of action, and in any event, "to permit state courts to rule first on what are substantially federal constitutional claims is inconsistent with Congress' grant of federal jurisdiction." *United Fence & Guard Rail Corp.*, 878 F.2d at 596 (citing, *inter alia, Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236-37 & n.4 (1984)).

Finally, to the extent that defendants argue that the language of plaintiffs' second cause of action—which "request[s] that this Court issue a declaration that the DRF is not a 'fee', but instead a 'penalty' or 'fine[']; or in the alternative that the DRF is a

---

[11] Further, as plaintiffs note, to the extent that *Guthart* clarified the application of state law to this case, then the first *Pullman* prong has not been satisfied.

[12] Thus, defendants err in citing to the Second Circuit's decisions in *Allstate Insurance Company v. Serio*, 261 F.3d 143 (2d Cir.), *certified question accepted*, 96 N.Y.2d 931 (2001), and *certified question answered*, 98 N.Y.2d 198 (2002); and *Expressions Hair Design v. Schneiderman*, 808 F.3d 118 (2d Cir. 2015), *vacated*

and remanded, 137 S. Ct. 1144 (2017). Both of those cases involved First Amendment challenges to vague New York statutes, and the Second Circuit found that certifying certain state law questions to the New York Court of Appeals was proper because those issues were antecedent to the federal claims. Here, in contrast, resolving plaintiffs' state law claims—which allege that the DRF is invalid under the New York Constitution and various state statutes—would not obviate the Section 1983 cause of action.

'mandatory surcharge'; or in the alternative that the DRF is a 'tax'" (SAC ¶ 131) and cites several New York statutes and cases—obligates application of unclear state law, the Court does not conclude that such an interpretation is warranted at this juncture. For instance, as discussed further *infra*, determining whether a statute imposes an unconstitutional punishment for bill of attainder purposes is a question of federal law. Thus, in deciding whether the DRF is a "penalty" as opposed to a "fee," the Court may not need to apply ambiguous New York legal authority. If, however, such a concern becomes relevant at a later stage of this case, the Court may re-visit the *Pullman* inquiry. *See* Fed. R. Civ. P. 12(h)(3).

Accordingly, as set forth above, the Court finds, in its discretion, that *Pullman* abstention—which is a limited exception to the rule that federal courts must exercise their mandatory subject matter jurisdiction, *see United Fence & Guard Rail Corp.*, 878 F.2d at 593—is inapplicable here because resolving plaintiffs' New York State law claims is not a condition precedent to adjudicating their federal constitutional challenges.[13]

## C.  Section 1983

Having determined that there is subject matter jurisdiction over this action, the Court proceeds to the merits of plaintiffs' Section 1983 claim and discusses each constitutional challenge seriatim.[14]

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.  In order to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was "committed by a person acting under the color of state law." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *see also Ahlers v. Rabinowitz*, 684 F.3d 53, 60-61 (2d Cir. 2012); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1501-02 (2012).  Here, defendants only contest the first factor.

For the reasons set forth below, the Court holds that plaintiffs have failed to state a cause of action based on alleged bill of attainder, procedural due process, substantive due process, equal protection, unjust takings, and double jeopardy violations.  However, the Court denies the motion to dismiss the excessive fines claim under Section 1983 on the ground that the DRF cannot be punitive. Because it was not raised by defendants, the

---

[13] Although defendants have not raised this argument in their motion, the Court also finds that *Wilton* abstention—which applies to Declaratory Judgment Act cases—does not pertain to this action because plaintiffs do not "seek purely declaratory relief," but also, *inter alia*, damages. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105-06 (2d Cir. 2012).

[14] At oral argument, plaintiffs averred that defendants had waived their merits challenges to the Section 1983 claim because they failed to reiterate those arguments in their reply brief.  Although the Court may accordingly deem those claims as abandoned, *see, e.g.*, *In re Dana Corp.*, 412 B.R. 53, 64 (S.D.N.Y. 2008), in its discretion, it will not do so.

Court does not address whether a $45 fine can be unconstitutionally excessive.

1. Bill of Attainder

Article I, Section 10, Clause 1 of the United States Constitution states, in relevant part, "No State shall . . . pass any Bill of Attainder . . . ." U.S. Const. art. I, § 10, cl. 1. "A bill of attainder is a legislative act which inflicts punishment without a judicial trial." *United States v. Lovett*, 328 U.S. 303, 315(1946) (quoting *Cummings v. Missouri*, 71 U.S. 277 (1866)). The Supreme Court has articulated three elements of a bill of attainder: (1) "specification of the affected persons," (2) "punishment," and (3) "lack of a judicial trial." *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 846-47 (1984).

"With respect to the existence *vel non* of punishment," the Second Circuit has identified the following three factors to consider:

(1) whether the challenged statute falls within the historical meaning of legislative punishment (historical test of punishment); (2) whether the statute, "viewed in terms of the type of severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes" (functional test of punishment); and (3) whether the legislative record "evinces a [legislative] intent to punish" (motivational test of punishment).

*ACORN v. United States*, 618 F.3d 125, 136 (2d Cir. 2010) (quoting *Selective Serv. Sys.*, 468 U.S. at 853). These three factors "are the evidence that is weighed together in resolving the bill of attainder claim." *Id.* (quoting *Con. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 350 (2d Cir. 2002)). Nevertheless, the Supreme Court has warned that, "[h]owever expansive the prohibition against bills of attainder, it surely was not intended to serve as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 471 (1977) (footnotes omitted). "Forbidden legislative punishment is not involved merely because the Act imposes burdensome consequences." *Id.* at 472.

The SAC alleges that the "DRF is a legislatively mandated fine and/or penalty, being imposed by a governmental entity under the color of law, without a trial, and without discretion by a court of law." (SAC at ¶ 45.) Additionally, it states that the "DRF penalty is imposed only against any individuals who have been issued a ticket by the Nassau County police or the TPVA under the authority of defendants, irrespective of guilt under the eyes of the law and/or a trial being conducted." (*Id.* at ¶ 47.) Defendants argue that the SAC fails to state a claim because (1) "the ordinance does not impose punishment upon an identifiable individual"; (2) "the assessment of a relatively modest fee for the processing of the infraction does not" constitute punishment as a matter of law; and (3) "[p]laintiffs had the ability to have a trial and obtain a disposition of not guilty." (Defs.' Br. at 9.)

The Court agrees with defendants that the SAC does not adequately allege the specificity element.[15] Plaintiffs are correct that for a legislative act to be a bill of attainder, it must "apply either to named

---

[15] Accordingly, the Court need not, and does not, address defendants' aadditional arguments regarding

lack of punishment and the availability of judicial process.

individuals or to easily ascertainable members of a group . . . ." *Lovett*, 328 U.S. at 315. However, the Supreme Court cautioned in *Nixon* that "the Constitution is [not] offended whenever a law imposes undesired consequences on an indvidual [sic] or on a class that is not defined at a proper level of generality." 433 U.S. at 469-70. This is because finding that "an individual or defined group is attainted whenever he or it is compelled to bear burdens which the individual or group dislikes" would "remove[] the anchor that ties the bill of attainder guarantee to realistic conceptions of classification and punishment" and "cripple the very process of legislating, for any individual or group that is made the subject of adverse legislation can complain that the lawmakers could and should have defined the relevant affected class at a greater level of generality." *Id.* at 470 (footnote omitted). Thus, although the SAC asserts that the DRF singles out ticketed motorists who do not receive a disposition of innocence, that is not the end of the specificity inquiry.

Instead, the Supreme Court has held that a law distinguishes a class of people for bill of attainder purposes when it speaks "in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 86 (1961); *see also Cummings*, 71 U.S. at 317-18 (holding that law was a bill of attainder because, *inter alia*, it singled out individuals for past involvement in the Confederacy); *Ex parte Garland*, 71 U.S. 333, 377-78 (1866) (same). In contrast, the Court has upheld laws with a prospective enforcement application even if they designate a particular group of individuals for possible sanction.

For instance, *Communist Party* held that the Subversive Activities Act was not a bill of a attainder because it "require[d] the registration only of organizations which, after the date of the Act, [were] found to be under the direction, domination, or control of certain foreign powers and to operate primarily to advance certain objectives," and thus, "[p]resent activity constitute[d] an operative element to which the statute attache[d] legal consequences, not merely a point of reference for the ascertainment of particular persons ineluctably designated by the legislature." 367 U.S. at 86-87; *see also id.* at 87 (holding that "[f]ar from attaching to the past and ineradicable actions of an organization," the Act's application was "made to turn upon continuing contemporaneous fact"). Likewise, in *Selective Service System*, the Supreme Court found that a federal statute was not sufficiently specific and, therefore, not a bill of attainder because it did not target a group based on their prior behavior, but instead penalized present and future violations of that law. 468 U.S. at 847-51; *see also id.* at 550-51 & n.7 ("Because it allows late registration, § 12(f) is clearly distinguishable from the provisions struck down in *Cummings* and *Garland*. *Cummings* and *Garland* dealt with absolute barriers to entry into certain professions for those who could not file the required loyalty oaths; no one who had served the Confederacy could possibly comply, for his status was irreversible.").

Conversely, the Second Circuit found in *Consolidated Edison* that a New York State law imposing a utility sanction for prior wrongdoing was an unconstitutional bill of attainder because of its "retrospective focus." 292 F.3d at 349. It emphasized that "defin[ing] past conduct as wrongdoing and then impos[ing] punishment on that past conduct" is an "indispensible [sic] element of a bill of attainder" because "[s]uch a bill attributes guilt to the parties or parties singled out in the legislation." *Id.* (citing, *inter alia*, *Nixon*, 433 U.S. at 472-73; *Cummings*, 71 U.S. at 325). Accordingly, the Second

Circuit held that "[t]he retrospective focus of Chapter 190 [was] essential to [its] determination that the statute is a bill of attainder. The power of legislatures to enact purely prospective changes to utility rates, even to the rates of a single utility, is considerably broader than their authority to act retrospectively." *Id.*

Here, there are no allegations in the SAC that defendants enacted or enforced the DRF to punish past conduct. Instead, plaintiffs assert that they have sufficiently alleged the specificity element because "individuals whose tickets/citations have '*a final disposition other than not-guilty*', which includes those motorists whose tickets have been dismissed . . . are 'easily ascertainable via the group defined by the [L]egislature." (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n Br."), ECF No. 30, at 11.) However, that is plainly not the applicable standard. As *Nixon* instructed, determining that a statute is a potential bill of attainder merely because it specifies an individual or a collective of individuals for sanction would "invalidat[e] every Act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals." 433 U.S. at 471; *see also Elgin v. U.S. Dep't of Treasury*, 641 F.3d 6, 21 (1st Cir. 2011) (Stahl, J., concurring in judgment) ("A statute meets the specification element if it identifies individuals by name or by description of prior conduct so that it operates only as a designation of particular persons. A statute of general applicability that affects individuals only upon enforcement is not a bill of attainder; it is simply an example of the quintessential legislation that the Constitution tasks Congress with creating." (citations omitted)), *aff'd sub nom. Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012).

Even construing the SAC in a light most favorable to plaintiffs and drawing all inferences in their favor, there are no claims that the DRF identifies individuals or a class of people for sanction based on their past acts; instead, the only plausible reading of the SAC is that the DRF is a "general enforcement statute" that "turn[s] upon continuing contemporaneous fact" because individuals are not assessed a fee until the TPVA dismisses their ticket or citation. As a result, plaintiffs have not adequately pled specificity, *see, e.g.*, *Communist Party*, 367 U.S. at 87, and accordingly, the Court dismisses the bill of attainder aspect of their Section 1983 claim.

### 2. Procedural Due Process

The crux of plaintiffs' Section 1983 claim is that the DRF violates their procedural due process rights. The SAC alleges that the "system the defendants have created through the TPVA Court for imposing the DRF is an unfair adjudication process against individuals who are simply issued a ticket by Nassau County law enforcement officer[s]" because "[t]here is no justification for taking away plaintiffs' and Class members' property (money) without any charges/accusatory instruments pending, nor any findings of fact against such individuals" or proof "that any violations occurred (i.e. - innocent until proven guilty)." (SAC at ¶¶ 51-53.) Moreover, plaintiffs aver that "by charging a DRF, the defendants have found a way to legally extort individuals whom appear before the TPVA" because if plaintiffs and others "refuse to pay such a fee they are scheduled for a trial, which is done as a penalty for refusing to pay and questioning the imposition of the DRF. Such trial may require additional days in court, and possibly even the retention of an attorney." (*Id.* at ¶ 57.) Similarly, the SAC alleges that

> there is a $125 non-refundable application fee to the TPVA to simply apply to vacate the DRF, as well as a

$250 non-refundable fee to appeal the application of the DRF. The faux procedures in place to simply question the DRF are more costly and expensive (and non-refundable) than the DRF itself, and therefore are substantially insufficient to protect an individual's due process rights (i.e. - even if they win the dispute before the TPVA, they will not get their $150 fee returned).

(*Id*. at ¶ 66.)

To assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [State] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted). Further, a plaintiff must prove that he or she was deprived of "'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). The Supreme Court, however, distinguishes between (1) claims based on established state procedures, and (2) claims based on random, unauthorized acts by state employees. *See Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); and *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). On the one hand, where a plaintiff alleges a deprivation pursuant to an established state procedure, "the state can predict when it will occur and is in the position to provide a predeprivation hearing." *Id.* (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)). "Under those circumstances, 'the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'" *Id.* (quoting *Hellenic*, 101 F.3d at 880). In contrast, when a plaintiff brings a procedural due process claim "[b]ased on random unauthorized acts by state employees," the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy.[16] *Id.* (citing *Hellenic*, 101 F.3d at 880; and *Hudson*, 468 U.S. at 532).

Here, defendants concede that "the *de minimus* [DRF] is [] a protected property interest for the procedural due process discussion."[17] (Defs.' Br. at 13.) Nevertheless, they contend that an adequate remedial process exists. At the second step of the above test, the Court must balance the following factors in evaluating the adequacy of a challenged procedure:

(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the

---

[16] This differing treatment for "random, unauthorized acts" rests on "pragmatic considerations." *Hellenic*, 101 F.3d at 880 (citing *Hudson*, 468 U.S. at 532-33). When an arbitrary act by a low-level state employee causes a deprivation, "it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Velez v. Levy*, 401 F.3d 75, 92 (2d Cir. 2005). Thus, "[w]here a pre-

deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter." *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984).

[17] As discussed *infra*, however, the Court concludes that the DRF does not implicate a property interest subject to substantive due process protections.

additional or substitute procedural requirement would entail.

*Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 167-68 (2d Cir. 2001) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Defendants argue that plaintiffs' procedural due process claim fails because "neither of the named plaintiffs claims to have pursued their remedies under the law," since they elected not to proceed to trial on their underlying tickets or citations. (Defs.' Br. at 13-14.) Further, defendants argue that, "[a]s a general rule, there can be no procedural due process violation when the state provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." (*Id*. at 14 (citation omitted).) The Court agrees that, based on the allegations in the SAC, adequate procedures exists to safeguard plaintiffs' property rights.

*First*, the Court finds that the "private interest" at stake is minimal. A $45 fee does not involve substantial property rights. *See, e.g.*, *Krieger v. City of Rochester*, 978 N.Y.S.2d 588, 601 (Sup. Ct. Monroe Cty. 2013) (holding on a procedural due process challenge to red-light traffic ticket laws that "the modest $50 penalty was not so substantial as to infringe upon a person's private property rights"); *cf. Pringle v. Wolfe*, 88 N.Y.2d 426, 431 (1996) ("It is well established that a driver's license is a substantial property interest that may not be deprived without due process of law.").

*Second*, insofar as plaintiffs allege that the DRF ensnares "innocent" motorists whose tickets or citations have been dismissed without a disposition of "not guilty" (*see* SAC at ¶¶ 36, 39, 53, 55, 61), the Court finds that there are adequate pre-deprivation and post-deprivation procedures to prevent erroneous determinations by the TPVA.[18] The Supreme Court has said that "due process ordinarily requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981) (citation omitted). "It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." *Id.* at 303 (quoting *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950)).

Here, plaintiffs concede that motorists accused of traffic violations are entitled to a trial on the merits, and that the relevant County ordinance does not impose a DRF on those who receive a "not guilty" finding. (*See* Pls.' Opp'n Br. at 17 & n.23.) Nevertheless, they assert that "[s]uch a situation flips the burden of proof, and is violative of numerous procedural due protections" because "the government cannot flip the burden to the individual to prove his innocence,"[19] and "motorists before the

---

[18] Because the SAC alleges a procedural due process violation based on "systemic" enforcement of the DRF, the Court concludes that available post-deprivation procedures will not, standing alone, necessarily satisfy due process. *See Hellenic*, 101 F.3d at 880; *Pierre v. N.Y.C. Taxi & Limousine Comm'n*, No. 17-CV-973 (MKB), 2017 WL 1417257, at *3 (E.D.N.Y. Apr. 19, 2017) (collecting cases).

[19] Plaintiffs' contention that motorists are required to "prove their innocence" before the TPVA to avoid imposition of the DRF appears to be a rhetorical statement rather than a factual description of the evidentiary burdens borne at a TPVA proceeding. Indeed, Section 227 of the New York Vehicle and Traffic Law provides that "[e]very hearing for the adjudication of a traffic infraction, as provided by this article, shall be held before a hearing officer . . . [and] [t]he burden of proof shall be upon the people, and no charge may be established except by clear and convincing evidence." N.Y. Veh. & Traf. Law § 227[1].

TPVA have no ability to dispute the DRF penalty, nor have a trial on the DRF itself." (*Id.* at 18.) However, that position is against the weight of federal and New York authority holding that due process is satisfied by notice and an opportunity to be heard before a motorist is punished for a traffic infraction. *See, e.g., Boguslavsky v. City of New York*, 173 F.3d 843, 1999 WL 197202, at *2 (2d Cir. 1999) (unpublished opinion) ("As for Boguslavsky's Fourteenth Amendment procedural due process claim, Boguslavsky was provided a hearing on the parking ticket underlying the booting incident and an opportunity to present evidence that the parking signs on the street were inadequate. Thus, the district court properly found that Boguslavsky had presented no factual basis for asserting a due process claim."); *Rackley v. City of New York*, 186 F. Supp. 2d 466, 482 (S.D.N.Y. 2002) ("There is no material factual dispute that the City's administrative parking violations system, together with the judicial system of the State of New York, provided plaintiff with adequate pre-deprivation remedies, adequate post-deprivation remedies, and sufficient notice that such remedies were available." (footnote omitted)); *Calabi v. Malloy*, 438 F. Supp. 1165, 1171-72 (D. Vt. 1977), *amended sub nom. Calabi v. Conway*, 468 F. Supp. 76 (D. Vt. 1978) (holding that there was no due process violation based on "the legislature's decision not to provide a separate pre-suspension hearing procedure" prior to suspending a motorist's license because "the opportunity to contest the actual traffic offense in court provide[d] the motorist with a hearing which [was] sufficient to meet due process standards"); *Pringle v. Wolfe*, 88 N.Y.2d 426, 434 (1996) (holding that "the minimal risk of an erroneous suspension [of a driver's license] is further diminished by the driver's right to a meaningful presuspension opportunity to rebut the" charges against him); *Krieger*, 978 N.Y.S.2d

at 602 (due process satisfied by notice and an opportunity to be heard at an evidentiary hearing before assessment of red-light traffic penalty).

Further, although plaintiffs contend that availing themselves of a trial would be costly and time-consuming (*see* SAC at ¶¶ 4-5, 57-58), "[t]he fact that [the available pre-deprivation] procedures place the onus for resolving outstanding tickets on the driver, rather than on the [County], does not violate the Due Process Clause of the United States Constitution." *Schaer v. City of New York*, No. 09 CIV. 7441 CM MHD, 2011 WL 1239836, at *9 (S.D.N.Y. Mar. 25, 2011). For example, in *Davis v. Nassau County*, No. 06-CV-4762 ADS WDW, 2011 WL 5401663 (E.D.N.Y. Nov. 5, 2011), the plaintiff sued, *inter alia*, the County and the TPVA for suspending his driver's license without a finding of guilt. The plaintiff acknowledged that he willfully chose not to attend a hearing on the alleged violation, and the court held that there was no procedural due process violation because

> as a matter of law, the Plaintiff was afforded with [sic] a sufficient pre-deprivation remedy that he chose not to pursue. The Plaintiff was given the opportunity of a trial on the merits and did not attend, even though he knew the consequences of not doing so. Therefore, the Court finds that the Plaintiff received all the process he was due under the law.

2011 WL 5401663, at *6. Similarly, plaintiffs here failed to pursue an available and adequate pre-deprivation procedure that may have avoided the DRF injury that led to this lawsuit. As a result, plaintiffs have not pled a procedural due process violation. *See, e.g., Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988) (to state a due process

claim, "a plaintiff must [allege] that he or she was deprived of 'an *opportunity* . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case" (citation omitted)).

Moreover, even where a post-deprivation procedure is not, by itself, sufficient relief for claims based on established state procedures, *see Hellenic*, 101 F.3d at 880, the *combination* of pre- and post-injury proceedings can provide constitutionally-sufficient redress. *See Levy v. Cohen*, 439 F. App'x 30, 31-32 (2d Cir. 2011) (holding that the "pre-deprivation proceedings available to [the plaintiff] . . . combined with the availability of an adequate post-deprivation remedy through New York's Article 78 proceeding, constituted sufficient process to satisfy the Due Process Clause of the Fourteenth Amendment" (citing *Harris v. Mills*, 572 F.3d 66, 76 (2d Cir. 2009) (denial by state agency of physician's petition to reinstate his revoked medical license did not deprive physician of due process, where physician was given adequate notice and opportunity to be heard before his petition for reinstatement was denied, and an adequate post-deprivation remedy was available through Article 78 proceedings); and *Rivera-Powell*, 470 F.3d at 466 (holding that pre-deprivation process was constitutionally adequate where the plaintiff received notice and was represented at a pre-deprivation hearing by an attorney)); *Morales v. New York*, 22 F. Supp. 3d 256, 277 (S.D.N.Y. 2014) ("Plaintiff's own allegations show that he was afforded disciplinary hearings and that he willingly abandoned at least some of these hearings. Moreover, Plaintiff could have brought an Article 78 proceeding under New York Civil Practice Law and Rules.").

To the extent that plaintiffs claim that any individual DRF assessment was in error—or that the DRF ordinance is in conflict with a state law requirement that, where traffic ticket "cases are dismissed upon appeal (from the TPVA court to the Appellate Term), all fines and fees [must be] returned to the individual" (Pls.' Opp'n Br. at 19)—New York provides an avenue for post-deprivation relief via an Article 78 proceeding, N.Y. C.P.L.R. § 7801 *et seq. See, e.g., De Asis v. New York City Police Dep't*, 352 F. App'x 517, 518 (2d Cir. 2009) ("Finally, insofar as Appellant can be construed as raising a due process claim based on the defendants' failure to refund a prepaid fine after Appellant successfully challenged his traffic citations, the claim is unavailing because a post-deprivation remedy was available, in the form of an Article 78 mandamus proceeding." (citing *New York State Nat'l Org. for Women*, 261 F.3d at 168)); *Nestle Waters N. Am., Inc. v. City of New York*, No. 15-CV-05189 (ALC), 2016 WL 3080722, at *11 (S.D.N.Y. May 25, 2016) (noting that "Article 78 proceedings allow for unfettered review of alleged errors in statutory interpretation"), *aff'd*, 689 F. App'x 87 (2d Cir. 2017). For instance, the Second Circuit held in *Nestle Waters* that there was no procedural due process violation based on the plaintiff's allegation that the defendants had a policy of issuing and enforcing defective parking summonses because the "review afforded through the Parking Violations Bureau ('PVB') administrative processes and Article 78 proceedings in New York State [was] adequate for due process purposes." 689 F. App'x at 88.

Based on the facts of this case—which, as noted, involves a property interest far less substantial than the suspension of a driver's license, *see Davis*, 2011 WL 5401663; the revocation of a professional license, *see Levy*, 439 F. App'x 30; or the removal of a candidate from an election ballot, *see Rivera-Powell*, 470 F.3d 458—the Court finds, as other courts in this Circuit have correctly

determined, *see, e.g.*, *Rackley*, 186 F. Supp. 2d at 482, that the availability of both pre- and post-deprivation procedures to plaintiffs was constitutionally adequate under the second prong of the *Mathews* inquiry.

The Supreme Court's recent decision in *Nelson v. Colorado* does not, as plaintiffs contend, affect this determination. (*See* Pls.' May 27, 2017 Letter, ECF No. 38.) There, the Court invalidated a Colorado statute on due process grounds because it permitted the state to "retain[] conviction-related assessments unless and until the prevailing defendant institute[d] a discrete civil proceeding and prove[d] her innocence by clear and convincing evidence" following vacatur of her criminal conviction. 137 S. Ct. at 1252. The Court held that "Colorado may not retain funds taken from [the petitioners] solely because of their now-invalidated convictions, for Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions." *Id*. at 1256 (citations omitted). However, *Nelson* is distinguishable from this case on three significant grounds.

First, and as discussed further *infra* with respect to plaintiffs' double jeopardy claim, plaintiffs have not alleged facts sufficient to show that TPVA proceedings are akin to criminal prosecutions, which implicate far more important rights than the property interest at issue here. Second, the Supreme Court emphasized in *Nelson* that the "risk [t]here involved [was] not the risk of wrongful or invalid conviction *any* criminal defendant may face," but rather "the risk faced by a defendant whose conviction has already been overturned that she will not recover funds taken from her solely on the basis of a conviction no longer valid." *Id*. at 1257. Thus, in *Nelson*, the petitioners were deprived of property based on convictions that were no longer extant. Here, plaintiffs

allege that the DRF is imposed after a ticket or citation is dismissed with a disposition of other than "not guilty." In other words, the deprivation at issue does not stem from a subsequently invalidated conviction. Finally, the Colorado statute that the Supreme Court struck down in *Nelson* placed the evidentiary burden on the defendant to demonstrate innocence, whereas here, the County must prove a traffic violation by "clear and convincing evidence" at any trial on the merits. *See supra* note 19. Accordingly, to the extent that plaintiffs would argue that *Nelson* changes the clear and consistent precedent summarized above, the Court disagrees and finds that it has no bearing on the *Mathews* test as applied to the facts of this case.

*Third*, in light of the Court's determination *supra* that the existing procedures are adequate, and given that neither party has suggested alternative or additional procedural protections, the Court need not address the final step of the *Mathews* analysis.

In sum, the Court concludes that plaintiffs have not plausibly stated a procedural due process claim because (1) the property interest at issue is minimal; and (2) there are adequate pre- and post-deprivation safeguards to prevent a wrongful injury. Therefore, the Court dismisses this aspect of plaintiffs' Section 1983 claim.

3. Substantive Due Process

The SAC also asserts that "the DRF violates plaintiffs' and Class members' substantive due process rights under the Fifth and Fourteenth Amendments" because

[i]rrespective of any procedural safeguards the defendants have utilized in assessing the DRF penalty against individuals whom have

simply been issued a ticket . . . defendants' imposition of the DRF penalty against plaintiffs and the Class when the ticket has been dismissed violates their fundamental right to property without sufficient substantive justification or rational basis in law.

(SAC at ¶ 63.)

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). Instead, the scope of substantive due process is very limited. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Supreme Court has said that it is "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). Substantive due process is a means of "protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

"In order to establish a violation of a right to substantive due process, [after plaintiff demonstrates that it was denied a valid property interest,] a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena*, 432 F.3d at 112 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8

(1998)). To satisfy this standard, a plaintiff must show that the government decision it challenges "was arbitrary or irrational or motivated by bad faith." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989).

Here, plaintiffs have not adequately alleged deprivation of a protected property right. As courts in this Circuit have correctly held, "the substantive Due Process clause does not protect plaintiffs from modest fines . . . ." *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 224 (E.D.N.Y. 2015) (holding that $65 fine imposed by the TPVA was not a substantive due process violation) (citing *Idris v. City of Chicago, Ill.*, 552 F.3d 564, 566 (7th Cir. 2009) ("The interest at stake is a $90 fine for a traffic infraction, and the Supreme Court has never held that a property interest so modest is a fundamental right."); *Kelly v. Rice*, 375 F. Supp. 2d 203, 209 (S.D.N.Y. 2005) ("Nothing about the issuance of a parking ticket implicates the rarely-used doctrine of 'substantive due process.' If a claim that a police officer's deliberate indifference caused the death of a motorist during a high-speed chase does not violate substantive due process, . . . then surely the issuance of a parking ticket on a single occasion does not do so." (citations omitted)); and *Krieger*, 978 N.Y.S.2d 588), *aff'd*, 630 F. App'x 61 (2d Cir. 2015); *see also Buttaro v. Affiliated Computer Servs., Inc.*, No. CV14353LDWSIL, 2016 WL 8711058, at *2 (E.D.N.Y. Dec. 2, 2016) (holding that plaintiffs failed to plead substantive due process violation based on an $80 fine). Likewise, the $45 sanction imposed by the DRF does not impinge an "interest[] that [is] 'implicit in the concept of ordered liberty'" and, therefore, does not implicate substantive due process protections.[20] *Local 342*, 31 F.3d at 1196

[20] Plaintiffs' attempt to distinguish *Leder* is unpersuasive. They argue that the instant case is

different because "the plaintiffs herein are not disputing individual's [sic] actions being arbitrary, but

(quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)).

As a result, the Court dismisses the substantive due process component of plaintiffs' Section 1983 claim.

### 4. Unjust Takings

In addition, the SAC states that defendants have violated "the Takings Clause of the Fifth Amendment" because "defendants have been systematically taking property from individuals (here, monetary amounts), without any compensation whatsoever, and without any just cause." (SAC at ¶ 77.) Plaintiffs further assert that, although the stated "purpose behind the DRF is the reimbursement the costs for issuing tickets/citations to drivers . . . such overhead fees for regulating the public should only be borne upon those who plead guilty and/or are found guilty of such infractions, and/or taxpayers as a whole . . . .'" (*Id.* at ¶ 80 (citing *Armstrong v. United States*, 364 U.S. 40, 49 (1960).)

The Fifth Amendment guarantees that no one will "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation," U.S. Const. amend. V, and it has been made applicable to the states through the Fourteenth Amendment, *see, e.g.*, *Weaver v. Brenner*, 40 F.3d 527, 534 (2d Cir. 1994). To plead a taking under the Fifth (or Fourteenth) Amendment, a plaintiff must allege that (1) plaintiff possessed a valid property interest; (2) there was a taking of that property interest under color of state law; and (3) the taking was without just compensation. *See, e.g.*, *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003); *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992).

However, even where a plaintiff has sustained an unjust taking, he "has not suffered a violation of the Just Compensation Clause until [he] has unsuccessfully attempted to obtain just compensation through the procedures provided by the State." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379 (2d Cir. 1995) (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)). "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cty.*, 473 U.S. at 194. "Thus, before a plaintiff may assert a federal takings claim, he must first seek compensation from the state if the state has a 'reasonable, certain and adequate provision for obtaining compensation.'" *Villager Pond*, 56 F.3d at 379-80; *see also Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014) (holding that to establish ripeness, a plaintiff "must 'show that (1) the state regulatory entity has rendered a final decision on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure'" (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). The Second Circuit has further held that "a state compensation procedure will be deemed available and adequate within the meaning of *Williamson* even when that procedure remains unsure and undeveloped."

---

instead the DRF ordinance itself being arbitrary . . . ." (Pls.' Opp'n Br. at 20 n.25.) However, as set forth above, a substantive due process violation must allege arbitrary state action that results in deprivation of a *property right*. Capricious conduct, standing alone, does not state a claim for relief. *See W. Farms Assocs.*

*v. State Traffic Comm'n of State of Conn.*, 951 F.2d 469, 472 (2d Cir. 1991) ("[A] plaintiff may not successfully claim a deprivation of property without due process absent the identification of a protected property interest.").

*Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 99 (2d Cir. 1992) (citations omitted).

Here, plaintiffs have not pled that they pursued any state court remedies for the purported takings, and "[c]ourts within the Second Circuit have uniformly dismissed Fifth Amendment takings claims at the pleadings stage when plaintiffs fail to sufficiently allege that they have availed themselves of such state procedures." *Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 591 (E.D.N.Y. 2011) (citing, *inter alia*, *Vandor, Inc. v. Militello*, 301 F.3d 37, 38-39 (2d Cir. 2002)). Moreover, courts in this Circuit have correctly and consistently held that Article I, Section 7 of the New York State Constitution—which provides that "private property shall not be taken for public use without just compensation," N.Y. Const. art. I, § 7—"satisfies the availability element of the second prong of *Williamson County*." *Melrose Credit Union v. City of New York*, No. 15-CV-09042 (AJN), --- F. Supp. 3d ---, 2017 WL 1200902, at *11 (S.D.N.Y. Mar. 30, 2017) (collecting cases) (citing, *inter alia*, *McCormack Sand Co. v. Town of N. Hempstead Solid Waste Mgmt. Auth.*, 960 F. Supp. 589, 595 (E.D.N.Y. 1997) ("New York law provides procedures for obtaining compensation for the alleged taking [of personal property], including a cause of action for inverse condemnation under Article I, Section 7 of the New York Constitution.")). "Indeed, Plaintiffs . . . assert a claim for compensatory damages under Article I, Section VII *in this very lawsuit*" as Count 8 of the SAC (*see* SAC at ¶¶ 203-12). *Melrose Credit Union*, 2017 WL 1200902, at *11.

Plaintiffs attempt to circumvent this pleading requirement by invoking the well-established rule that there is no need to *exhaust* available state remedies prior to instituting a Section 1983 action. (*See* Pls.'

Opp'n Br. at 14-15 & n.19.) However, the Supreme Court squarely rejected that argument in *Williamson County* and, in so doing, explained the difference between the exhaustion and ripeness doctrines:

> Respondent asserts that it should not be required to seek variances from the regulations because its suit is predicated upon 42 U.S.C. § 1983, and there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action. *Patsy v. Florida Board of Regents*, 457 U.S. 496 (1982). The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable.
>
> . . .
>
> While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy* concerned the latter, not the former.
>
> . . .
>
> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. . . . If the government has provided an adequate process for obtaining compensation, and if resort to that process yields just compensation, then the property

owner has no claim against the Government for a taking.

473 U.S. at 192-95 (citations and alterations omitted).

Thus, plaintiffs err in relying on the rule that failure to exhaust state avenues for relief does not bar Section 1983 actions. Ripeness, not exhaustion, is the relevant inquiry, and plaintiffs have not suffered a takings violation under the Due Process Clause if they have not attempted to secure compensation via state procedures. Thus, the Court grants defendants' motion to dismiss plaintiffs' unjust takings claim because the SAC does not allege a ripe injury.

5.  Equal Protection

As for the equal protection prong of plaintiffs' Section 1983 claim, the SAC alleges that

> defendants have deprived the plaintiffs of equal protections under law by imposing the DRF (which is unquestionably a penalty/fine for simply being issued a ticket/citation), which groups innocent individuals along with guilty individuals, whom are all imposed with the same monetary penalty/fine.
> . . .
> Very simply, to charge the DRF penalty against innocent individuals, when the court (here, the TPVA) does not have sufficient evidence to make

a guilty finding is an explicit violation of the Equal Protections Clause.

(SAC at ¶¶ 82, 84.)

The Fourteenth Amendment to the United States Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This language has been interpreted to mean that, in legislation, "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where, as here,[21] a challenged law does not discriminate against a suspect class or implicate a fundamental right, rational basis scrutiny applies. *See Hayden v. Paterson*, 594 F.3d 150, 170 (2d Cir. 2010).

This standard of review is "a paradigm of judicial restraint." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993); *see also id.* at 313 ("Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."). "In areas of social and economic policy," a statutory classification must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *id.* at 313, and such a statute is valid unless the "varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational," *Hayden*, 594 F.3d at 170 (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)); *see also Beach Commc'ns*, 508 U.S. at 316 ("Defining the class of persons subject to a regulatory requirement—much like

---

[21] Plaintiffs concede that their equal protection claim does not implicate a suspect class or a fundamental right. (Pls.' Opp'n Br. at 15.)

classifying governmental beneficiaries—inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." (alterations and citation omitted)); *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1063 (2d Cir. 1989) (holding that a statute exercising general police power "will not be held unconstitutional if its wisdom is at least fairly debatable and it bears a rational relationship to a permissible state objective"). "The party challenging such an ordinance bears the heavy burden of negating every conceivable rational and legitimate basis for the ordinance." *Casciani v. Nesbitt*, 392 F. App'x 887, 889 (2d Cir. 2010) (citing *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 75 (2001)).

Plaintiffs have not carried their pleading onus in this case. Although the SAC summarily alleges that the DRF's classification scheme is not "rational" (*see, e.g.*, SAC at ¶¶ 63, 65), those threadbare, conclusory assertions are insufficient under the legal standard set forth *supra. See, e.g.*, *Seabrook v. City of New York*, 509 F. Supp. 2d 393, 402 (S.D.N.Y. 2007); *Rheaume v. Pallito*, No. 5:11-CV-72 (JC), 2012 WL 3394343, at *5 (D. Vt. July 13, 2012) ("Indeed, [the plaintiff's] entire equal protection claim, asserted amidst a string of other alleged constitutional violations, is precisely the sort of 'threadbare recital' that the Supreme Court has deemed insufficient." (citing *Iqbal*, 556 U.S. at 678)), *report and*

*recommendation adopted*, 2012 WL 3518535 (D. Vt. Aug. 14, 2012). Plaintiffs have not alleged any facts from which a plausible claim could be made that the DRF lacks "any reasonable conceivable" purpose.[22] Indeed, its acknowledged, ostensible objective—to recoup administrative costs associated with processing and adjudicating traffic violations (*see* SAC at ¶ 34)—would certainly be a prudent goal. *See Guthart*, 52 N.Y.S.3d at 824 (noting that the "legislative finding supporting the [DRF] is stated in the amending ordinance to be that 'the current fee charged to motorists appearing before TPVA whose cases have been adjudicated to a final disposition other than not guilty is currently below the actual cost of adjudicating those cases'").

Insofar as plaintiffs allege that the DRF has an improper ulterior motive—namely, to finance the County's budget deficits (*see* SAC at ¶¶ 34-38)—"defendants' *subjective* motivation in enacting the ordinance is irrelevant to the question of whether the ordinance itself is constitutionally valid." *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 437 (W.D.N.Y. 2009), *aff'd*, 392 F. App'x 887 (2d Cir. 2010); *see also Beach Commc'ns*, 508 U.S. at 315 ("Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.").

Finally, although plaintiffs argue that they are entitled to discovery to demonstrate that the DRF lacks rationality (*see* Pls.'

---

[22] Plaintiffs cite *Sacher v. Village of Old Brookville*, 967 F. Supp. 2d 663 (E.D.N.Y. 2013), in their opposition, but that case is inapposite because it concerned a "class-of-one" equal protection claim, and the relevant touchstone was whether plaintiffs had sufficiently pled disparate treatment. *Id.* at 670-72.

Here, plaintiffs have not met their burden of pleading facts that would "negat[e] every conceivable rational and legitimate basis for the [DRF]." *Casciani*, 392 F. App'x at 889.

Opp'n at 17), "it is well settled that 'the Government has no obligation to produce evidence, or empirical data to sustain the rationality of a statutory classification.'" *Jones v. Schneiderman*, 888 F. Supp. 2d 421, 428 (S.D.N.Y. 2012) (quoting *Lewis v. Thompson*, 252 F.3d 567, 582 (2d Cir. 2001). "In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315. "To hold otherwise would be to interpret the Fourteenth Amendment in a way that is destructive to federalism and to the power of the sovereign states to regulate their internal economic affairs." *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 287 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1160 (2016); *see also id.* ("Much of what states do is to favor certain groups over others on economic grounds. We call this politics."). Thus, even were plaintiffs to proceed to summary judgment on their equal protection claim, they could not undermine the DRF's rationality through extrinsic evidence or testimony.[23] Put differently, if a reasonable purpose appears on the face of the challenged law, then the Court's inquiry is at an end.

In sum, because plaintiffs have not adequately alleged that the DRF ordinance is irrational, the Court dismisses the equal protection portion of their Section 1983 claim.[24] *See Casciani*, 659 F. Supp. 2d at 434; *Immaculate Heart Cent. Sch. v. N.Y.* *State Pub. High Sch. Athletic Ass'n*, 797 F. Supp. 2d 204, 211 (N.D.N.Y. 2011) ("When neither the complaint nor the non-moving party's opposition negate 'any reasonably conceivable state of facts that could provide a rational basis' for the challenged classification, a defendant's motion to dismiss an equal protection claim will be granted." (citation omitted)).

### 6. Double Jeopardy

Plaintiffs also assert a double jeopardy violation on the ground that "[b]y imposing the DRF upon individuals after the charges/accusatory instrument against them have been dismissed, the TPVA court is subjecting/jeopardizing individuals twice to the same charges/assessment of penalties." (SAC at ¶ 86.)

The Double Jeopardy Clause protects an individual's right not to be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2. It prohibits both the second prosecution of a defendant for the same offense after an acquittal or a conviction and the imposition of multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794 (1989). In *Hudson v. United States*, 522 U.S. 93 (1997), the Supreme Court clarified that the "Clause protects only against the imposition of multiple *criminal* punishments for the same

---

[23] As a result, the legislative histories that plaintiffs attached to and cited in their opposition (*see* ECF No. 29) are irrelevant. In any event, they are outside the pleadings and are not materials that a Court may consider on a motion to dismiss. *See supra* Part II.B.

[24] In the event of dismissal, plaintiffs have requested leave to amend their pleading to assert a "class-of-one" equal protection claim. (*See* Pls.' Opp'n at 16 n.21.) Given that this a putative class action, it is unclear that plaintiffs could successfully allege such a

cause of action. *See Fortress Bible Church v. Feiner*, 694 F.3d 208, 221 (2d Cir. 2012) (observing that "the Supreme Court affirmed [has] the existence of a class-of-one theory for equal protection claims, under which *a single individual* can claim a violation of her Equal Protection rights based on arbitrary disparate treatment" (emphasis added) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000))). However, in an abundance of caution, the Court will grant plaintiffs leave to amend to attempt to assert that claim.

offense," and it thus does not extend to civil penalties. *Id.* at 99.

In *United States v. Ursery*, 518 U.S. 267 (1996), the Supreme Court articulated a two-part test to determine whether a sanction is criminal or civil. First, a court must consider whether the legislative "intent underlying the enactment of, or the end served by" the law. *Doe*, 120 F.3d at 1273. "[I]f a disability is imposed 'not to punish, but to accomplish some other legitimate governmental purpose,' then it has been considered 'nonpenal.'" *Id.* (quoting *Trop v. Dulles*, 356 U.S. 86, 96 (1958)). Second, if the law was not designed to be punitive in nature, courts must then determine whether, despite this, it is "so punitive either in purpose or effect" that it is "transform[ed] into a criminal penalty . . . ." *United States v. Ward*, 448 U.S. 242, 249 (1980). "The Supreme Court has not spelled out the precise nature of the second-stage inquiry," *Doe v. Pataki*, 120 F.3d 1263, 1275 (2d Cir. 1997), and indeed has determined it to be "a highly context specific matter," *Flemming v. Nestor*, 363 U.S. 603, 616 (1960). However, the Court has set forth a list of considerations to guide the inquiry, including

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it

appears excessive in relation to the alternative purpose assigned . . . .

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) (footnotes omitted). The list is not exhaustive nor is any particular inquiry dispositive. *See United States v. Ward*, 448 U.S. 242, 249 (1980); *Doe*, 120 F.3d at 1275 ("Sometimes one factor will be considered nearly dispositive of punitiveness 'in fact,' while sometimes another factor will be crucial to a finding of nonpunitiveness." (citation omitted)). Moreover, the Supreme Court has cautioned that "all civil penalties have some deterrent effect," and if a civil sanction was required to be "'solely' remedial (i.e., entirely nondeterrent) . . . then no civil penalties are beyond the scope of the [Double Jeopardy] Clause." *Hudson*, 522 U.S. at 102.

The burden thus rests on the party challenging the law to "show by 'the clearest proof' that the sanctions imposed 'are so punitive in form and effect as to render them criminal despite [the legislature's] intent to the contrary.'" *Doe*, 120 F.3d at 1274 (quoting *Ursery*, 518 U.S. at 290). The Supreme Court has described this burden as "heavy" and found punishments such as involuntary civil confinement to be civil in nature. *See Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). At the same time, the Court has recognized that sanctions imposed in civil proceedings may constitute punishment. *See Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767 (1994); *Hudson*, 522 U.S. at 95.

Here, plaintiffs argue that they have carried their pleading burden because the SAC alleges that the DRF is punitive. (Pls.' Opp'n Br. at 21-22; *see, e.g.*, SAC at ¶ 45.) However, as the court in *Guthart* noted, "[t]he legislative finding supporting the [DRF] is stated in [Nassau County Ordinance

190-2012] to be that 'the current fee charged to motorists appearing before TPVA whose cases have been adjudicated to a final disposition other than not guilty is currently below the actual cost of adjudicating those cases.'" *Guthart*, 52 N.Y.S.3d at 824 (quoting Nassau Cty. Ordinance § 190-2012). Thus, because the Legislature evidently intended the DRF to be, at least in part, remedial, plaintiffs have not met the first part of the *Ursery* test.[25] *See Hudson*, 522 U.S. at 102.

Further, plaintiffs have not alleged facts sufficient to state a plausible claim that the DRF ""[is] so punitive in form and effect as to render [it] criminal . . . .'" *Doe*, 120 F.3d at 1274 (quoting *Ursery*, 518 U.S. at 290). Indeed, such a claim would not be plausible given the weight of New York legal authority holding that penalties for traffic infractions are civil and not criminal. *See Dolce v. Nassau Cty. Traffic & Parking Violations Agency*, 7 N.Y.3d 492, 493-94, 497 (2006) ("reviewing the language of the statute authorizing the creation of the TPVA and its legislative history" and noting that the TPVA's purpose was to enable "divestiture in City and District Courts statewide of jurisdiction over non-criminal traffic violations and parking violations" (citation omitted)); *Krieger*, 978 N.Y.S.2d at 598-99 (holding double jeopardy does not apply to red-light ticket penalties because "the statutory scheme demonstrates an unequivocal intent to create a civil enforcement mechanism, not a criminal one," and "the limited $50 fine is not so severe as to transform the intended civil penalty into a quasi-criminal one"); *Cty. of Nassau v.*

*Levine*, 907 N.Y.S.2d 563, 568 (Dist. Ct. Nassau Cty. 2010) ("As for movant's claim that his due process rights are violated because he will not be able to cross-examine a live witness [at a hearing on a red-light ticket], and assuming that claim be correct, inasmuch as he faces neither criminal conviction nor conviction for any provision of the Vehicle and Traffic Law, his assertion is without merit."); *People v. Haishun*, 656 N.Y.S.2d 660, 661 (App. Div. 2d Dep't 1997) ("Applying the *Ursery* two-prong test to the instant case, we conclude, as have the Third and Fourth Departments, that sentencing a defendant for driving while intoxicated after the suspension of his or her driver's license pursuant to Vehicle and Traffic Law § 1193(2)(e)(7), does not violate double jeopardy principles." (citations omitted)).

Accordingly, the Court dismisses plaintiffs' double jeopardy claim because they have not alleged facts sufficient to plausibly state either that (1) the Legislature intended the DRF to be a criminal sanction, or (2) the DRF and the circumstances surrounding its imposition are so punitive that it is effectively penal in nature.[26]

7. Excessive Fines

Finally, the SAC alleges that the "DRF imposed by the defendants is an excessive fine issued against those whose only improper action is simply being issued a ticket," and that "[b]y charging a penalty after the charges/accusatory instrument have been dismissed, defendants have violated the Eighth Amendment's prohibition upon

---

[25] As discussed further *infra*, for purposes of the Excessive Fines Clause, a civil sanction may be both remedial and punitive and still be subject to the Eighth Amendment's ambit. Thus, even if a law does not implicate double jeopardy protections, it may still be considered a "fine." *See Hudson*, 522 U.S. at 103.

[26] Therefore, the Court need not, and does not address, defendants' additional argument that the Double Jeopardy Clause does not apply to this case because the DRF is not imposed following a judgment of acquittal or conviction. (*See* Defs.' Br. at 17.)

excessive fines in comparison to the accused actions." (SAC at ¶¶ 90-91.)

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., Amend. 8. The Supreme Court has explained that "the word 'fine' . . . mean[s] a payment to a sovereign as punishment for some offense." *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989) (footnoted omitted). "The Excessive Fines Clause thus 'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 609-10 (1993)).

The Second Circuit has established a "two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016) (footnote omitted), *cert. denied*, 137 S. Ct. 1223 (2017). First, a court must "determine whether the Excessive Fines Clause applies at all." *Id*. at 109 (citing *Bajakajian*, 524 U.S. at 334). That requirement is met if a forfeiture "may be characterized, at least in part, as 'punitive'—*i.e.*, forfeitures for which a defendant is personally liable." *Id*. (citing *Bajakajian*, 524 U.S. at 327-28). "In contrast, purely 'remedial' forfeitures—*i.e.*, those *in rem* forfeitures intended not to punish the defendant but to compensate the Government for a loss or to restore property to its rightful owner—fall outside the scope of the Excessive Fines Clause." *Id*. (citing *Bajakajian*, 524 U.S. at 329; and *Paroline v. United States*, 134 S. Ct. 1710, 1726 (2014) ("The primary goal of restitution is remedial or compensatory, but it also serves punitive purposes. That may be sufficient to bring it

within the purview of the Excessive Fines Clause.")).

Second, a court must "determine whether the challenged forfeiture is unconstitutionally excessive." *Id*. at 100 (citing *Bajakajian,* 524 U.S. at 334.) "A forfeiture is unconstitutionally excessive 'if it is grossly disproportional to the gravity of a defendant's offense.'" *Id*. (quoting *Bajakajian*, 524 U.S. at 334). The Second Circuit has articulated a four-factor test governing this inquiry:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Id*. (quoting *United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015)). Moreover, the Second Circuit has said that "courts may consider—in addition to the four factors . . . previously derived from *Bajakajian*— whether the forfeiture would deprive the defendant of his livelihood, *i.e.*, his 'future ability to earn a living.'" *Id*. at 111 (citation omitted).

Here, defendants argue that the Court need not consider whether the DRF is "unconstitutionally excessive" because it is "not punitive in nature." (Defs.' Br. at 20.) They assert that because the DRF is not imposed following a "criminal or quasi-criminal proceeding from which there was a finding of guilt or innocence" and is assessed "to defer the administrative costs associated

with a ticket's processing," the Excessive Fines Clause does not apply. (*Id*. at 19.)

However, in *Austin*, the Supreme Court held that because the "purpose of the Eighth Amendment . . . was to limit the government's power to punish," the Excessive Fine Clause may apply to civil forfeiture if that sanction "can only be explained as serving *in part* to punish." 509 U.S. at 609-10 (emphasis added) (citing *United States v. Halper*, 490 U.S. 435, 447 (1989) ("It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties."), *abrogated on other grounds by Hudson*, 522 U.S. 93). "Thus, the question is not . . . whether [the] forfeiture . . . is civil or criminal, but rather whether it is punishment." *Id*. at 610 (footnote omitted); *see also Halper*, 490 U.S. at 448 ("[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.").

Accordingly, defendants are mistaken to contend that for a sanction to be a "fine," it must be the result of a "criminal or quasi-criminal proceeding from which there was a finding of guilt or innocence."[27] Following *Austin* and *Bajakajian*, both federal and New York State courts have found that administrative and other civil penalties satisfy the first part of the test delineated above, even if they bear no direct relationship to a criminal prosecution.[28] *See, e.g.*, *Korangy v. U.S. F.D.A.*, 498 F.3d 272, 277 (4th Cir. 2007) (assuming that Food and Drug Administration "penalties [were] at least partially punitive and thus subject to the Eighth Amendment," but "conclud[ing] that [the] penalties imposed [were not] grossly disproportionate to the gravity of the offense"), *cert denied sub nom. Korangy Radiology Assocs., P.A. v. Food & Drug Admin.*, 552 U.S. 1143 (2008); *Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir. 1999)

---

[27] Prior to *Austin*, the Supreme Court held in *Ingraham v. Wright*, 430 U.S. 651 (1977), a case concerning corporal punishment in schools, that

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Id*. at 671 n.40; *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that individual could not sue hospital for failing to provide medical care after he was shot because where there has "been no formal adjudication of guilt . . . the Eighth Amendment has no application").

However, the Supreme Court subsequently distinguished that decision and its progeny on the ground that it involved alleged cruel and unusual punishment. *See Browning-Ferris Indus.*, 492 U.S. at 263 n.3 ("*Ingraham*, like most of our Eighth Amendment cases, involved the Cruel and Unusual Punishments Clause, and it therefore is not directly controlling in this Excessive Fines Clause case.") Further, as set forth *supra*, *Austin* and related case law make clear that a civil proceeding that does not involve a formal adjudication of guilt may nevertheless result in an excessive fine.

[28] As noted *supra* note 25, in this way, the Excessive Fines Clause has a more expansive reach than the Double Jeopardy Clause, which is limited to criminal sanctions and civil penalties that are so punitive as to effectively be criminal in nature. *See Ursery*, 518 U.S. at 286 ("But *Austin*, it must be remembered, did not involve the Double Jeopardy Clause at all. *Austin* was decided solely under the Excessive Fines Clause of the Eighth Amendment, a constitutional provision which we never have understood as parallel to, or even related to, the Double Jeopardy Clause of the Fifth Amendment.").

(holding that "fines imposed by the City under the ordinances at issue here [were] not solely remedial" and therefore were subject to Eighth Amendment), *cert. denied*, 528 U.S. 874 (1999); *Sanders v. Szubin*, 828 F. Supp. 2d 542, 553 n.8 (E.D.N.Y. 2011) (observing that defendants conceded that administrative sanctions imposed by Office of Foreign Assets Control were "at least in part, punitive and thus [] properly considered within the ambit of the Eighth Amendment's prohibition of 'excessive' fines"); *Prince v. City of New York*, 966 N.Y.S.2d 16, 20 (App. Div. 1st Dep't 2013) (in a case challenging a mandatory sanitation fine, "reject[ing] the City's contention that the Excessive Fines Clause does not apply to the civil penalty at issue here" because "[a]lthough Eighth Amendment claims often arise in the criminal context, civil fines may also fall within reach of the amendment," and "[t]he relevant inquiry is not whether the fine arises in the civil or criminal context, but whether the fine constitutes punishment" (collecting cases)). *But see New York State Fed'n of Taxi Drivers, Inc. v. City of New York*, 270 F. Supp. 2d 340, 343 (E.D.N.Y. 2003) ("Plaintiff cites no authority for the proposition that administrative penalties of the sort challenged here could be subject to the Eighth Amendment.").

Thus, to determine whether the DRF constitutes an excessive fine, the appropriate standard is not whether it stems from a criminal or pseudo-criminal proceeding, but whether it is punishment. Although defendants argue that the DRF has the legitimate remedial purpose of "defer[ring] the administrative costs associated with a

ticket's processing," on a motion to dismiss, the Court must assume the allegations in the SAC to be true, and plaintiffs have adequately asserted that the DRF is, at least in part, punishment imposed "against individuals for simply being issued a ticket without any findings of fact, nor proof of any actual violations," and "irrespective of whether or not they are actually guilty of any offense or violation . . . ."[29] (*Id*. at ¶¶ 32-34.)

Accordingly, because plaintiffs have asserted that the DRF has a punitive purpose, the Court finds that they have stated a cause of action pursuant to the Excessive Fines Clause. As noted, defendants do not argue that the SAC fails to plausibly assert that the DRF is "unconstitutionally excessive," and plaintiffs do allege that the DRF is disproportionate "in comparison to the accused actions (i.e. - no charges pending, yet a penalty still imposed)." (SAC at ¶ 91.) Thus, the Court does not reach this second requirement.

\*\*\*

In sum, with respect to defendants' subject matter jurisdiction arguments, the Court concludes that *Rooker-Feldman* does not bar adjudication of this case because plaintiffs are not state court losers and are not seeking review of an adverse state judgment, but rather assert a general constitutional challenge to the DRF. In addition, the Court, in its discretion, declines to abstain under either *Younger* or *Pullman* because there are no pending state court proceedings involving plaintiffs in which they could assert their Section 1983 claim, and resolution of plaintiffs' constitutional claims does not

---

[29] Accordingly, defendants err in relying on *Ford Motor Credit Company v. New York City Police Department*, 394 F. Supp. 2d 600 (S.D.N.Y. 2005), because that decision involved a motion for summary judgment, and the court concluded based on the facts in the record that a municipal fine was "plainly not punitive and therefore not subject to Eighth

Amendment analysis," but instead "remedial, as it is imposed to compensate the City for administrative expenses incurred in the disposition of [] vehicles." *Id.* at 618, *aff'd*, 503 F.3d 186 (2d Cir. 2007). In contrast, this action is at the pleadings stage, and defendants have adduced no facts demonstrating that the DRF has a wholly non-punitive objective.

depend on interpreting or applying unclear state law.

On the merits, the Court grants defendants' 12(b)(6) motion to dismiss (1) the bill of attainder claim because plaintiffs have not sufficiently alleged specificity; (2) the procedural due process claim because plaintiffs have not sufficiently alleged inadequate procedures connected to deprivation of a substantial property interest; (3) the substantive due process claim because plaintiffs have not sufficiently alleged deprivation of a protected property right; (4) the unjust takings claim because plaintiffs have not sufficiently alleged a ripe injury; (5) the equal protection claim because plaintiffs have not sufficiently alleged that the DRF lacks a rational basis; and (6) the double jeopardy claim because plaintiffs have not sufficiently alleged that the DRF is a criminal sanction by design or is so punitive as to effectively be a criminal sanction.

However, the Court denies the motion to dismiss the excessive fines claim under Section 1983 on the ground raised by defendants—namely, that the DRF cannot be punitive because it is not imposed following a criminal or quasi-criminal proceeding and is assessed to defray administrative costs. Because it was not raised by defendants, the Court does not reach the second issue with respect to the excessive fines claim—that is, whether a $45 fine can be unconstitutionally excessive.

Therefore, the Court grants defendants' motion in part and denies it in part, and, because one of plaintiffs' federal claims survives, the Court will not dismiss the pendant state law claims at this stage.[30]

D. Leave to Amend

In the event of dismissal, plaintiffs have only requested leave to amend their equal protection claim. *See supra* note 24. Nevertheless, the Court has considered whether plaintiffs should be granted leave to amend their other Section 1983 claims. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *see Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (finding that leave to amend may be denied based upon the "futility of amendment"). As to futility, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. RustOleum*

---

[30] The Court notes that plaintiffs' brief focuses on the unconstitutional application of the DRF as to tickets or citations that the TPVA has dismissed with a disposition of other than "not guilty." However, the SAC alleges claims on behalf of, *inter alia*, a proposed "*ultra vires* class" that includes "[a]ll persons who paid a [DRF] to the [TPVA] between January 1, 2008 and the present." (SAC at ¶ 93.) In other words, plaintiffs also apparently challenge the constitutionality of the DRF as to tickets or citations

imposed against motorists who received a "guilty" disposition and paid that fee.

The Court's analysis in this Memorandum and Order applies equally to all DRF assessments irrespective of a ticket or citation's final disposition. In fact, many of plaintiffs' Section 1983 claims, including the procedural due process claim, do not apply to "guilty" dispositions. In any event, the Court dismisses the Section 1983 claims—except for the excessive fines claim—as to all applications of the DRF.

*Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

In light of the pleading deficiencies discussed above, it is not clear to the Court that plaintiffs can plausibly state any of the federal constitutional claims that the Court has dismissed. However, in an abundance of caution, the Court will grant plaintiffs leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion to dismiss. With plaintiffs' consent, the Court dismisses defendant TPVA and plaintiffs' Article 78 claim (Count 20 of the SAC). In addition, the Court dismisses plaintiffs' bill of attainder, procedural due process, substantive due process, unjust takings, equal protection, and double jeopardy claims under Section 1983 for failure to state a claim with leave to amend. The Court denies defendants' motion with respect to the excessive fines claim. Any amended complaint must be filed within thirty (30) days of this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:     September 27, 2017
              Central Islip, NY

                      ***

Plaintiffs are represented by Kevin Page, Kiel Martin Doran, and Steven M. O'Connor of O'Connor Reed, LLP, 242 King Street Port Chester, New York 10573.

Defendants are represented by Andrew Reginald Scott of the Nassau County Attorney's Office, 1 West Street, Mineola, New York 11501.