UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X      2:16-CI-04209(JFB)(AKT)
DENJAMIN DUBIN and
BYRON ALSTON, on behalf of themselves
And all others so similarly situated,

                      Plaintiffs,

      * against *

THECOUNTY OF NASSAU, THE NASSAU
COUNTY LEGISLATURE and THE NASSAU
COUNTY TRAFFIC AND PARKING
VIOLATIONS AGENCY,

                      Defendants.
----------------------------------------------------------------X

DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
THIRD AMENDED COMPLAINT

JARED A. KASSCHAU
Acting County Attorney
1 West Street
Mineola, New York 11501
(516) 571-3056

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted in support of the Defendants' motion to dismiss the Plaintiffs' Third Proposed Class Action Complaint. The Third Amended Complaint (the "TAC") purports to assert causes of action on behalf of a class and alleges the violation of the plaintiffs' constitutional rights in violation of 42 U.S.C. §1983. The nature of the claim is that the Driver Responsibility Fee ("DRF") authorized by ordinance to be imposed upon those who are charged with a violation, but attain a resolution of the violation by means other than a finding of Not Guilty, are to be charged the DRF. The TAC claims that assessing the DRF in instances where the violation is conceded, but the charges are dismissed upon remedying the violation (Dubin) or assessing the DRF on all charges where several charges are dismissed in satisfaction as part of plea negotiations (Alston) violate due process.

Such allegations miss the mark. Due Process requires notice and the opportunity to be heard. Here, the it is clear that one who has committed not offense is not charged with the DRF and if that fee is erroneously charged, there are procedures in place to have that assessment vacated (as alleged in the TAC itself). Those who choose not to avail themselves of the protections afforded, but rather seek an alternative other than trial should not be heard to complain that the procedures are not in place. They have simply chosen not to avail themselves of those protections.

As will be discussed herein, while the Third Amended Complaint has narrowed the number of causes of action alleged it still, as a whole, still fails to allege a viable cause of action. The two causes of action, for violation of procedural due process and for illegal exaction do not state viable causes of action and the TAC should be dismissed.

## FACTS

The Third Amended Complaint essentially alleges that both Plaintiffs had been issued traffic tickets which were returnable in the Nassau County Traffic and Violations Agency ("TPVA"). (C. 18, 24).[1] Both allege to have been assessed a Drivers' Responsibility Fee ("DRF"). (C. 21, 25).

The TAC alleges that the DRF is a "non-discretionary penalty", which is not based on an actual adjudication. (C.28). It also alleges that the DRF is a way to charge a fee without any findings of fact (C. 32); that the DRF is a fine and not a fee (C. 34) and that the reason for the fee is to generate revenue for the County. (C. 37). By virtue of these allegations, it is alleged that the Defendants have violated 42 U.S.C. §1983 in depriving the Plaintiffs of their constitutional rights under operation of state law.

Although the TAC itself alleges (C. 56) there exists a process whereby the Plaintiffs could have challenged the assessment of the fee or taken an appeal to the Appellate Court, but that they chose not to do so because of the high cost to do so. Rather, plaintiffs seek to recover damages in this court for damages for having to pay the driver responsibility fee.

The Second Amended Complaint does not allege that the laws imposing the Driver Responsibility Fee, *e.g.,* Ordinance 374-15 amending Ordinance 16-2011 as amended by Ordinance 75-2014 were not properly or lawfully enacted. Nor does the TAC allege that the County was unauthorized to enact such legislation.

The major distinction between the Second Amended Complaint and the TAC, as regards the factual allegations of each, is that whereas the Second Amended Complaint alleged that the DRF was assessed "which is not based on an actual adjudication by any Court (Second Amended

---

1 Reference "C.#" is to the paragraph of the Third Amended Complaint in which the allegation appears.

2

Complaint, ¶ 28), the TAC changes this theory and alleges that the TPVA is a criminal court.

The TAC alleges:

> 14. Given the facts immediately alleged above, the TPVA is a court of law, and not a quasi-judicial agency. The TVPA court of law is adjudicating criminal matters, and therefore those appearing before the TPVA are entitled to due process of law under with full criminal procedural protections. *See,* Medina v. California, 505 U.S. 437 (1992); and Hines v. Miller, 318 F.3d 157, 162 (2d Cir. 2003). "In our view, the Mathews balancing test does not provide the appropriate framework for assessing the validity of state procedural rules which, like the one at bar, are part of the criminal process." Medina v. California, 505 U.S. 437, 443 (1992).

The foregoing allegation serves as a basis for the TAC's ultimate difference from the allegations of the Second Amended Complaint. The TAC continues:

> 45. Since the TPVA is a court of law, the individual defendants whom appear before such court of law are entitled to criminal procedural protections under law. "[Even though] a traffic infraction is not a crime . . . we have generally held that such prosecutions are governed by the rules of criminal law." People v. Phinney, 22 N.Y.2d 288, 290 (1968). " '[T]raffic infractions' are of the grade of 'offenses', not felonies or misdemeanors, but they are tried like misdemeanors and to them, as to "offenses", there should be applicable the criminal-law rules of presumption of innocence." People v. Hildebrandt, 308 N.Y. 397, 400 (NY, 1955). Ergo, while the *penalties* for traffic infractions and parking violations may be *'civil* violations' (i.e. - limited to a monetary fine), they are still afforded *criminal procedural protections* under New York Law.

As will be discussed herein, even given Plaintiffs' new legal theories regarding the nature of TPVA and thus the authority to assess the DRF, the TAC fails to sufficiently state a cause of action for the violation of 42 U.S.C. §1983 for violation of a right secured by the Constitution and laws of the United States. *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004), *quoting West v. Atkins,* 487 U.S. 42, 48 (1988).

**ARGUMENT**

The first cause of action in the Third Amended Complaint alleges only that the defendants deprived plaintiff of "numerous rights, privileges, or immunities secured by the Constitution of the United States" (C. 112) but does not allege what constitutional rights are alleged to have been infringed. Since complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987), the Second Amended Complaint's assertions that the plaintiffs were assessed a Driver Responsibility Fee (of between Fifteen and Forty-Five Dollars) appears to be the operative fact.

*Standard of Review*

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see, Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir.2009). First, although the Court must accept all allegations as true, this principle is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

# POINT 1

*Procedural Due Process*

Where a plaintiff alleges violations of procedural due process "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*". *Reed v. Medford Fire Dept., Inc.*, 806 F Supp. 2d 594, 609 (E.D.N.Y. 2011), *quoting Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 984, 108 L. Ed. 2d 100 (1990).

In order to sustain an action for deprivation of property without due process of law, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Is. Pub. Serv. Employees, UMD, ILA, AFL-CIO v Town Bd. of Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir 1994) (citation omitted). To determine whether the Plaintiff has a valid Section 1983 due process claim, the Court applies a two-step inquiry: (1) whether the Plaintiff possesses a liberty or property interest and, if so, (2) what process he is due before he can be deprived of that interest. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). For the purposes of this motion to dismiss, the Defendants will not contend that the *de minimus* fee is not a protected property interest for the procedural due process discussion. Thus, the question is whether the Plaintiffs were deprived of an *opportunity* to be heard in a meaningful manner. *Brady v Town of Colchester,* 863 F.2d 205, 211 (2d Cir. 1988).

Here, the TAC alleges that alleges that both Plaintiffs had been issued traffic tickets which were returnable in the Nassau County Traffic and Violations Agency. (C. 16, 23). Both allege to have been assessed a DRF. The TAC also alleges that motorists charged with violations are permitted to go to trial (C. 58) and that there is an opportunity to appeal any

5

adverse decision. (C. 66). Moreover, the TAC demonstrates that in instances where such appeals are taken and the Appellate Term reverses the conviction, that it orders the return of any fine paid, including the DRF. (C. 56), which alleges:

> 56. There are numerous appellate cases which have held that where the initial citations/violations against an individual are dismissed as a matter of law (on appeal), that *all* the fines, fees, and surcharges imposed by the TPVA court are to be refunded/remitted back to the motorist, including the DRF. People v. Gbadebo, 50 Misc.3d 141 (A)(App. Term, 2d Dept., February 22, 2016); People v. Eisenstadt, 48 Misc.3d 56 (App. Term, 2d Dept., 2015); People v. Ruh, 48 Misc.3d 129(A) (App. Term, 2d Dept., 2015); People v. Rubalsky, 42 Misc. 3d 138(A)(App. Term, 2d Dept., 2014 ); and People v. Raffa, 31 Misc. 3d 8 (App. Term, 2d Dept. 2011 ). Despite these rulings, the defendants still continue to charge individual motorist whom appear before the TPVA Court the DRF on dismissed tickets.

(emphasis in original).

Yet, neither of the named plaintiffs claims to have pursued their remedies under the law. TAC ¶¶ 21, 24. Rather, both sought resolution of the charges against them by means other than going to trial where a determination would be made as to whether the infraction occurred or whether they were Not Guilty. Not having proceeded to trial, there is no question that Plaintiffs did not avail themselves of the appellate process. Plaintiffs chose the expedient route, despite the fact that other procedural safeguards were in place affording due process. Stated differently, the fact that the Plaintiffs charted their own procedural course, does not render the other process constitutionally invalid.

Applied to the allegedly representative Plaintiffs, the TAC does not allege that plaintiff, Dubin, contested the allegations of the ticket. Rather, he availed himself of the remedy afforded by NY Vehicle and Traffic Law §376-a(4). (C.19). This provision only provides that the ticket is to be dismissed, not that the offender did not commit the violation charged or was found not guilty. The ticket was still processed by TPVA and was subsequently dismissed. *Id.* Even if the

6

fee was charged in violation of state law, as alleged (TAC ¶25), this does not rise to the level of a constitutional violation. Section 1983 "safeguards certain rights conferred by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004), *quoting West v. Atkins,* 487 U.S. 42, 48 (1988). A violation of state law is not cognizable under § 1983. *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985).

Plaintiff, Alston received seven tickets. In plea negotiations with prosecutors, he pleaded guilty of four of the violations and had three others dismissed, presumably in satisfaction of the other guilty pleas. (C.23). Again, the Second Amended Complaint does not allege that Plaintiff Alston availed himself of either his right to a trial or subsequent appeal. In other words, Alston did not seek to prove his innocence, but rather otherwise negotiated the resolution of the violations. In this regard, Plaintiffs' claims are similar to those presented in *Rackley v. City of New York*, 186 F. Supp. 2d 466, 484 (SDNY 2002) (finding that plaintiffs' failure to timely pay negotiated lower parking fines in a timely fashion did not constitute a due process violation.

Therefore, it is respectfully submitted that the Plaintiffs have, as a matter of law, failed to utilize the procedural processes available to them. As a general rule, there can be no procedural due process violation when the state "provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 610 (E.D.N.Y. 2011); *quoting New York State Nat. Org. for Women v. Pataki,* 261 F.3d 156, 168 (2d Cir.2001) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)); *see also, Chase Group All. LLC v City of New York Dept. of Fin.*, 620 F3d 146, 153 (2d Cir 2010); *Hefferan v Corda*, 498 Fed Appx 86, 88 (2d Cir 2012); *Segal v. City of New York*, 459 F.3d 207, 218 [fn 10] (2d Cir 2006); *De Asis v New York City Police Dept.*, 352 Fed Appx 517, 518 (2d Cir

7

2009); *Iwachiw v. N.Y. City Bd. of Elections*, No. 12 CIV. 3520 JMF, 2013 WL 3110839, at *3 (S.D.N.Y. June 20, 2013).

## POINT 2

*The Fees are not Excessive as a Matter of Law*

The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S. Ct. 2028, 2036, 141 L. Ed. 2d 314 (1998). Where, however, a fine is relatively minor, it has been found not to be of constitutional significance as a matter of law. *Shibeshi v. City of New York*, No. 11 CIV. 4449 (LAP), 2011 WL 13176091, at *2 (S.D.N.Y. Sept. 21, 2011), *aff'd*, 475 F. App'x 807 (2d Cir. 2012); *see also, Popescu v. City of San Diego*, No. 06CV1577-LAB LSP, 2008 WL 220281, at *4 (S.D. Cal. Jan. 25, 2008).

Here, the alleged amount in controversy, Forty-Five ($45.00) Dollars per violation, cannot be said to be of constitutional significance as a matter of law.

## POINT 3

*There is no separate Cause of Action*
*For "Illegal Exaction"*

The TAC alleges that the assessment of the DRF amounts to an "Illegal Exaction" and "Count II" of the Third Amended Complaint alleges this as a separate cause of action. Paragraph 95 of the TAC alleges that "[t]he DRF is an illegal exaction, under the guise of a fine and/or penalty issued under color of law by the defendants without proper authority under law."

However, there is no cause of action known as "Illegal Exaction" under the laws of the United States. Rather, it appears that the doctrine of "illegal exaction" is used by the federal courts to determine whether the United States Court of Claims has jurisdiction to hear claims

8

against the United States. It has not been applied otherwise. If the claim is that "Illegal Exaction" claim is one arising from the law of New York State, such claim does not comport with the jurisdictional allegations of the TAC. TAC, ¶ 16.[2]

For instance, in *Yankee Atomic Elec. Co. v United States*, 112 F3d 1569, 1571 (Fed Cir 1997), a case cited in the TAC, the District Court determined that "the assessment imposed to fund clean-up costs constitutes an unlawful exaction because it violates the Government's earlier contractual agreement.[3] *Yankee Atomic Elec. Co. v United States*, 112 F3d 1569, 1571 (Fed Cir 1997). In *Pan Am World Airways v. United States*, 122 F. Supp. 682, 683 (Ct. Cl. 1954), to which the Third Amended Complaint also refers, the question was whether money collected on behalf of the United States under an invalid regulation was tort or founded upon any express or implied contract with the United States, over which the Court of Claims would have jurisdiction. Id. at 683. In *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996), the issue again was whether the Court of Claims had jurisdiction over the claim against the United States pursuant to the Tucker Act, 28 U.S.C. §1491(a)(1). *See, Aerolineas Argentinas v. United States*, 31 Fed. Cl. 25, 29 (1994), *vacated*, 77 F.3d 1564 (Fed. Cir. 1996).

As stated in *United States v. KPMG LLP,* No. 05 CR. 903 (LAP), 2007 WL 541956, at *9 (S.D.N.Y. Feb. 15, 2007):

> An "illegal exaction" claim may only be maintained where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all of part of that sum" that "was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967), *overruled on other grounds by Claude E. Atkins Enter., Inc. v. United States,* 15 Ct.Cl. 644,

---

[2] "This Court has original jurisdiction pursuant to 28 USC §§ 1331 and 1342(a)(1 ), given that there are causes of actions based in violations of the US Constitution and based on 42 USC § 1983."

3 The District Court began its analysis with the rule that contracts with the United States, like contracts between private parties, "remain subject to subsequent legislation by the presiding sovereign. *Yankee Atomic Elec. Co. v. United States*, 33 Fed. Cl. 580, 583–84 (1995), *rev'd*, 112 F.3d 1569 (Fed. Cir. 1997) (citations omitted).

9

646 & n. 2 (1988); *see also Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1573 (Fed.Cir.1996) ("[A]n illegal exaction has occurred when 'the Government has the citizen's money in its pocket.' Suit can then be maintained ... to recover the money exacted.") (quoting *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 580 (1954)). It is undisputed that KPMG, not the Wiesner Intervenors, paid the $356 million that was purportedly taken by the Government.

Since the instant action is not against the United States (the "government" as used in the cases cited above), it appears that the doctrine of "illegal exaction" has no application to this claim.

If Plaintiffs claim, notwithstanding the jurisdictional allegation, that the term "illegal exaction", is a claim over which the Court should exercise supplemental jurisdiction (28 U.S.C. §1367) such a cause of action does not exist in its own right, but rather is a term that the courts in New York State have used as grounds for permitting recovery of a payment of an improper tax. Normally, such recovery would be barred if the payment was not made under protest. *See, Video Aid Corp. v. Town of Wallkill,* 85 N.Y.2d 663, 667, 651 N.E.2d 886, 888 (1995). That is, the Court of Appeals used the term in describing duress by stating: "… the persons or corporations involved were wholly or partly prevented from engaging in business unless the illegal exactions were paid. *Five Boro Elec. Contractors Ass'n, Inc. v. City of New York*, 12 N.Y.2d 146, 150, 187 N.E.2d 774, 776 (1962). Stated differently, the term does not describe a cause of action, but rather an act that may give rise to a cause of action. *See, e.g., Frymer v. Bell,* 99 A.D.2d 91, 93, 472 N.Y.S.2d 622, 624 (1984) ("The Board's calculation would require an additional fee of $8,854.82, an illegal exaction. Trial Term was correct in finding no basis in fact for such an assessment.").

Thus, the TAC's Second Cause of Action does not provide a separate and/or distinct basis for relief either under the laws of the United States or of New York State.

## CONCLUSION

For the reasons stated herein, the TAC fails to state viable causes of action under §1983. Here, the Plaintiffs both had traffic violations that were adjudicated by TPVA. One negotiated a plea agreement where some of the violations were dismissed in satisfaction of other charges; the other had the violation dismissed as a result of subsequently repairing the defect which resulted in the ticket. Neither claims that they were innocent of the changes (that is, that the violation was not committed) and neither claims to have availed themselves of the process afforded, the right to trial and appeal. Both now complain that the legislature violated their rights by imposing TPVA's administrative costs on them by way of the DRF rather than imposing those costs on taxpayers generally. Certainly, this is a legitimate legislative determination.

In summary, the Plaintiffs' claims that their federally-protected constitutional rights were violated should be dismissed.

Dated: Mineola, New York
       January 26, 2018

_____
JARED A. KASSCHAU
Acting County Attorney
1 West Street
Mineola, New York 11501
(516) 571-3056

By: Andrew R. Scott
Deputy County Attorney
(516) 571-3013