UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

BENJAMIN DUBIN and BYRON ALSTON, on behalf
of themselves and all others so similarly situated,

                            Plaintiffs,

        -against-

THE COUNTY OF NASSAU, THE NASSAU COUNTY
LEGISLATURE and THE NASSAU COUNTY TRAFFIC
AND PARKING VIOLATIONS AGENCY,

                          Defendants.

------------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 16-4209 (JMA) (ARL)

**LINDSAY, Magistrate Judge:**

      Plaintiffs Benjamin Dubin and Byron Alston (collectively, "Plaintiffs") bring this

putative class action against defendants the County of Nassau (the "County"), the Nassau County

Legislature (the "Legislature"), and the Nassau County Traffic and Parking Violations Agency

(the "TPVA")[1] (collectively, "Defendants") asserting claims for violations of various federal

constitutional rights.  Before the Court, on referral from District Judge Azrack, are the following

motions:  Defendants' motion for summary judgment pursuant to Federal Rule of Civil

Procedure ("Rule") 56, ECF No. 140; Plaintiffs' motion seeking reconsideration of the portion of

Judge Bianco's September 27, 2017 Memorandum and Order granting in part and denying in

part Defendants' motion to dismiss ("September 2017 Decision") dismissing Plaintiffs' Taking

Clause claim, ECF No. 141; and Plaintiffs' motion for summary judgment on liability pursuant

Rule 56, ECF No. 141.  For the reasons set forth below, the Court respectfully recommends that

---

[1] The TPVA is a non-suable entity under New York State law and Judge Bianco dismissed all claims against the TPVA in 2017.

Plaintiffs' motion for reconsideration be granted,  Defendants' motion for summary judgment be denied, and Plaintiffs' motion for summary judgment be granted in part, denied in part.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.

Plaintiffs Dubin and Alston are both New York State.  Third Amend. Compl. ¶¶ 7-8. Defendants are the County and the Legislature.  *Id.* at  ¶¶ 9-10.  The County is a local New York government governed by the Legislature, which established the TPVA and enacted ordinances related to the DRF.  *Id.*

Plaintiff Dubin was issued a ticket for a defective brake light on July 31, 2015.  Def. Rule 56.1 Stmt. ¶ 11.  Along with the ticket, Plaintiff Dubin was provided a Statement of Correction for Defective Equipment, which stated that, pursuant to NY VTL § 376-a, if the defect was corrected by sunset of the following business day after the ticket was issued, the charge would be dismissed.  Pl. Rule 56.1 Stmt.  ¶ 68.  Plaintiff Dubin provided proof of repair to the TPVA and requested dismissal of the charge.  Def. Rule 56.1 Stmt. ¶ 12.  The form was returned to him by the TPVA on August 14, 2015 and he was instructed that the proof of repair needed to be accompanied by a $30 Driver Responsibility Fee ("DRF").  *Id.* at ¶ 13; Pl. Rule 56.1 Stmt. ¶ 74. The DRF letter makes clear that the TPVA would not process his request for a dismissal until the $30 fee was remitted.  *Id.* at ¶ 80.  On September 16, 2015, the TPVA received Plaintiff Dubin's resubmitted dismissal package, along with his $30, and processed the dismissal.  *Id.* at ¶ 81.

Plaintiff Dubin believed that after the dismissal was processed, the TPVA court would return the $30 DRF, however, the DRF was not refunded. *Id*. at ¶¶ 83-85.

Plaintiff Alston was issued seven tickets in May, October, and November of 2015 for various traffic infractions, including one for no seat belt, three for an uninspected vehicle under 60 days past due; two for an unregistered vehicle, and one for an uninspected vehicle over 60 days past due. *Id*. at ¶ 86. Plaintiff Alston appeared before JHO Philip Milone on February 16, 2016, to resolve all of his outstanding tickets. *Id*. at ¶ 87. At this hearing, Plaintiff Alston plead guilty to four of the violations, and the remaining three were dismissed. For each of the three tickets which were dismissed, the TPVA charged Plaintiff Alston $70 - the DRF fee ($45), a $10 collection fee, and $15 deferred payment fee, resulting in a total of $210 for three dismissed tickets. *Id*. at ¶ 89. There is no indication in the transcript of the hearing before the JHO that there was a plea deal or plea agreement made by Alston. *Id*. at ¶ 90.

The DRF was first enacted by the Legislature in 2008 for six types of dismissed tickets for defendant-motorists appearing before the TPVA. Pl. Rule 56.1 Stmt. ¶ 1. The DRF, then known as the Administrative Fee, did not apply to tickets where the defendant-motorist was found "not guilty." *Id*. at ¶ 2. The TPVA's reasoning for imposing the DRF was to reimburse the County for the costs to the TPVA to process such dismissals. *Id*. at ¶ 3. The original fee was $15 per traffic-stop, no matter how many dismissed-tickets arose from that traffic stop. *Id*. at ¶ 9. Before the DRF was enacted, a ticket's dismissal resulted in the County receiving no money for the traffic stop and court processing expense. *Id*. at ¶ 10.

As noted in the Staff Summary, in addition to the recoupment of the costs for processing the dismissed tickets, the DRF was also being charged on dismissed tickets to discourage repeat offenders. *Id*. at ¶ 4. According to internal records, staffers opined that "[a] more equitable

allocation of these costs would impose them on the motorists obtaining such dismissals. They are not without blame, benefit most from the dismissals, and stand to benefit the most from the incentive that a modest administrative fee would make toward deterring repeat offenses." *Id*. at ¶ 5. David Rich, Executive Director of the TPVA, drafted the original Staff Summary for the DRF, and agreed with the Staff Summary's statement of the intent of the Ordinance. *Id*. at ¶ 7. The TPVA noted that the DRF for dismissed tickets was being imposed on defendant-motorists simply due to a ticket being issued (and not due to any adjudication, finding of fact, or determination of guilt). "However, because production-of-proof dismissals do not result in the collection of fines that may be viewed as offsetting the costs of enforcement [i.e. - issuance of a ticket], it is ultimately the residents of the County who currently shoulder the expenses connected with such dismissals. A more equitable allocation of these costs would impose them on the motorists obtaining such dismissals. They are not without blame, benefit most from the dismissals and stand to benefit the most from the incentive that a modest administrative fee would-make toward deterring repeat offenses." *Id*. at ¶ 8.

In certain circumstances, the TPVA Court provides ticket dismissals as a "courtesy" to the defendant-motorists (i.e. – a unilateral dismissal; no quid pro quo, no plea bargain). *Id*. at ¶ 12. In situations where the dismissal is made as a unilateral courtesy, the defendant-motorist is nevertheless charged the DRF. *Id*. at ¶ 13. If the defendant-motorist does not pay the DRF fee, the dismissal is not processed by the TPVA court. *Id*. at ¶ 14. The defendant-motorist does not have the ability to dispute or object to the DRF assessment before the TPVA. *Id*. at ¶ 15. Notably, a defendant-motorist also does not have the ability to appeal the DRF, as the appellate court loses jurisdiction to adjudicate any legal issues where there is a dismissal. *Id*. at ¶ 16. The

only way to avoid a DRF is by proceeding to trial and be found not guilty on the underlying ticket. *Id*. at ¶ 17.

When it was originally enacted the DRF only related to dismissed tickets, and only asserted one fee per traffic stop. *Id*. at ¶ 19. However, in October of 2010, the Legislature amended the DRF to remove the limit of one DRF per traffic stop, making the DRF applicable to each ticket dismissed. *Id*. at ¶ 20. The October 2010 amendment also made the DRF applicable to all traffic tickets where motorists were found guilty, as well as all dismissals (i.e. – not just limited to the original six violations). *Id*. at ¶ 21. In addition to offsetting the cost of processing the tickets which are dismissed, Judge Marks noted that the fee was being expanded in 2010 to help pay for a new computer system at the TPVA Court. *Id*. at ¶ 22.

In March of 2011, the DRF Ordinance was again amended, to include an additional $15 deferral fee, meaning that if a motorist needed additional time to pay any fee or fines (including the DRF), they would be charged an additional fee of $15 for the initial extension of time, with a $10 fee for each subsequent request for extension of time to pay. *Id*. at ¶ 25. This Ordinance (16-2011) became the operative Ordinance relating to the DRF. *Id*. at ¶ 26. In August of 2012, the DRF was increased from $15 per ticket to $30 per ticket. *Id*. at ¶ 27. Judge Marks (on behalf of the TPVA) testified and confirmed before the Legislature that the DRF was to "deter drivers" from breaking the law. *Id*. at ¶ 30. Judge Marks also noted that it was his hope that the DRF would decrease recidivism of traffic infractions. *Id*. at ¶ 32. One legislator noted that the County needed the additional revenue that would be generated if the DRF was raised from $15 to $30: *Id*. at ¶ 33.

The Judicial Hearing Officers ("JHOs") who preside over the TPVA hearings have no discretion on whether to impose a DRF on dismissed tickets. *Id*. at ¶ 39. Judge Marks admitted

that upon dismissal, a court loses jurisdiction over the charges against the defendant-motorist. *Id*. at ¶ 40. Judge Marks also admitted that pursuant to NY Crim. Proc. Law § 160.60, upon the termination of criminal action in favor of a defendant, the court cannot assert any fees against such person. *Id*. at ¶ 41.[2] In September of 2015, Judge Marks proposed increasing the DRF in from $30 to $45 and on November 23, 2015, the Legislature approved the increase. *Id*. at ¶¶ 45 46.

On an average day, the TPVA court will process between 500-1,000 people in the morning session, and 200-400 in the afternoon session. That is between 700 – 1,400 people a day who go through the TPVA court (not taking into account tickets processed by mail without an in-person appearance required). *Id*. at ¶ 63. Of roughly the 1000 defendant-motorists who proceed through the TPVA each day, on average there are only 20 trials a day conducted. *Id*. at ¶ 64. The Exec. Director of the TPVA admitted that only a very small percentage of defendant-motorist go to trial and that before a trial can occur a defendant-motorist must appear before the TPVA at least twice. *Id*. at ¶¶ 65, 66.

## II.    Procedural Background

---

[2] Interestingly, in June of 2015, the New York Senate and Assembly passed legislation to create NY Vehicle & Traffic Law § 1804, which prohibits any fees or surcharges being charged against a defendant unless there is a conviction. *Id*. at ¶ 42. The Bill's justification was based upon:

> Assessing a fine, penalty, forfeiture, or fee for a violation that has been dismissed places an undue burden on motorists and should not be allowed. Numerous complaints have risen in which a motorist is charged an "administrative fee." when their charge has been dismissed. People who have to show up to court must sacrifice their time away from work, family, and other responsibilities only to find out they owe a fee for showing up even after their violation is dismissed by the court

*Id*. at ¶ 43. Senate Bill 5046A and Assembly Bill 7230A were signed into law by Gov. Cuomo on December 22, 2015 (creating NY VTL § 1804), with an effective date of March 21, 2016. *Id*. at ¶ 48.

Plaintiff Dubin commenced this action on July 29, 2016.  ECF No. 3.  An amended complaint, adding Plaintiff Alston, was filed on October 20, 2016.  ECF No. 12.  A Second Amended Complaint was filed on November 30, 2016.  ECF No. 23.  Defendants moved to dismiss the Second Amended Complaint on January 13, 2017.  ECF No. 25.  On September 27, 2017, Judge Bianco granted in part and denied in part Defendants' motion to dismiss ("September 2017 Decision").  ECF No. 50.  Judge Bianco found that Plaintiffs failed to plead "a plausible cause of action based on their bill of attainder, procedural due process, substantive due process, unjust takings, equal protection, and double jeopardy allegations." *Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 372 (E.D.N.Y. 2017).  Judge Bianco denied Defendants' motion to dismiss the excessive fines claim under Section 1983 on the ground that the DRF cannot be punitive because it is not imposed following a criminal or quasi-criminal proceeding and is assessed to defray administrative costs.  *Id*.  Plaintiffs consented to the dismissal of all claims against the TPVA and Plaintiffs' Article 78 claim.  *Id*.

Following Judge Bianco's dismissal, Plaintiffs filed a Third Amended Complaint on November 13, 2017.  ECF No. 56.  In the Third Amended Complaint, Plaintiffs assert claims for Violation of Federal Rights Under Color of State Law, 42 USC § 1983, based upon the Fifth, Eighth and Fourteenth Amendments (Count I) and Illegal Exaction (Count II).  Third Am. Compl. ¶¶ 88-99.[3]  Defendants moved to dismiss the Third Amended Complaint on January 26, 2018, arguing that Plaintiffs' procedural due process claim failed because Plaintiffs had failed to allege they were deprived of an opportunity to be heard in a meaningful manner, the fees assessed were not excessive as a matter of law, and there is no separate cause of action for illegal

---

[3] In the Proposed Fourth Amended Complaint submitted by Plaintiffs in connection with their motion for summary judgment Plaintiffs reassert a claim for violation of Section 1983.  ECF No. 141-4.  In their motion for summary judgment Plaintiffs argue that the Taking Clause Claim is reasserted in Plaintiffs' Fourth Amended Complaint.  Pl. SJ Mem. at 10-13.

extraction.  ECF No. 64.  By Order dated April 11, 2019, Judge Bianco dismissed Plaintiffs'

claim for illegal extraction and denied Defendants' motion to dismiss Plaintiffs' procedural due

process and Eighth Amendment claims, noting that Defendants were "free to re-assert the

arguments for dismissal at the summary judgment stage, upon completion of discovery."  ECF

No. 92.  Judge Bianco issued a detailed ruling on the motion to dismiss on the record ("April

2019 Decision").  ECF No. 93.  In denying Defendants' motion to dismiss Plaintiffs' procedural

due process claim, Judge Bianco pointed out that with respect to Plaintiff Dubin, "Mr. Dubin had

got a ticket for a defective brake light. The ticketed advised him that he could obtain dismissal of

the charge under VTO 37-6A if it was corrected."  As noted by Judge Bianco, looking at "the

ticket in terms of what notice . . . was given to Mr. Dubin with regard to the fee, the [DRF] fee

being assessed, if it was dismissed as opposed to a not guilty result. And the ticket itself

including the page that contains the process for the dismissal, there is no mention, there is no

notice to Mr. Dubin on the ticket itself that if he obtains a dismissal that he's going to be assessed

the DRF."  Transcript of Apr. 11, 2019 Hearing, ECF No. 93.  Judge Bianco continues, "[s]o the

plaintiffs allege having utilized what he's entitled to under 37-6A which is dismissal. He at that

point having exercised that option is left with no ability to challenge the DRF in any way. He has

no ability to be able to challenge it in the traffic court. It's alleged, and I don't think it's denied by

the defendants that once he obtains the dismissal he has no ability to challenge the DRF -- first of

all, he has no ability to independently challenge the DRF, . . . prior to dismissal, but after the

dismissal, he has no ability to challenge DRF in any . . . have any relief whatsoever."  *Id*. at 6.

Accordingly, Judge Bianco concluded that based upon these facts, a plausible due process claims

existed.  *Id.*  Judge Bianco expressly rejected Defendants' argument that the dismissal is not a

finding of not guilty and therefore the *Nelson v. Colorado* analysis has no application.  Judge

Bianco noted that Plaintiff Alston was in a somewhat different position because no facts are alleged surrounding the circumstances of the dismissal of three of seven of Plaintiff Alston's claims and that this should be resolved at summary judgment. *Id*. at 11.

With respect to Plaintiffs' claim under the Eighth Amendment for excessive fines, Judge Bianco reiterated his position with respect to the punitive nature of the DRF and rejected Defendants' argument that because the dollar value of the DRF is de minimis no Eighth Amendment claim can exist. *Id*. at 12. Judge Bianco noted that the was no "Supreme Court case law or Second Circuit case authority that suggests that there's some minimum amount of a fine or a monetary penalty that is necessary to trigger Eighth Amendment scrutiny. So I believe that this does state a plausible claim." *Id.* Finally, Judge Bianco dismissed Plaintiffs' claim for illegal extraction. *Id.*

This matter was reassigned to Judge Azrack on May 30, 2019. On September 6, 2022, the parties filed a status report indicating discovery had been completed, ECF No. 135, and a briefing schedule on the motions for summary judgment was set. Electronic Order dated August 23, 2022. Defendants' motion for summary judgment was filed on March 31, 2023. ECF No. 140. Plaintiffs' cross motion for summary judgment and motion for reconsideration were filed on April 6, 2023. ECF No. 141. By order dated November 1, 2023, Judge Azrack referred all three motions to the undersigned for a Report and Recommendation.

## DISCUSSION

### I.  Standard of Law

### A.  Summary Judgment

Both parties have moved for summary judgment.  "'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)).  In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc*., 150 F.3d 132, 137 (2d Cir. 1998).   If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable.  *See Holt v. KMI-Continental, Inc*., 95 F.3d 123, 129 (2d Cir. 1996), *cert denied*, 520 U.S. 1228 (1997).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994).  When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[T]here must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim."  *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *Celotex,* 477 U.S. at 322).  A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case.  "When no rational jury could find in favor of the nonmoving party because the evidence to

support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

The above standard remains applicable where, as here, both parties have filed cross-motions for summary judgment.   In such circumstances, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Sussman v. Rabobank Int'l*, 739 F. Supp. 2d 624, 627 (S.D.N.Y. 2010) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) and citing *S.E.C. v. Lyon*, 605 F. Supp. 2d 531, 540 (S.D.N.Y. 2009)).

## B.  Reconsideration

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd*., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790)).  "Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce resources." *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (internal citations and quotations marks omitted). The decision to grant or deny a motion for reconsideration falls squarely within the discretion of the district court. *See Devlin v. Transportation Communications International Union*, 175 F.3d 121, 132 (2d Cir.1999).

## II.    Analysis

### A.  Procedural Due Process and Excess Fines Claims

Defendants move for summary judgment on the two remaining claims set forth in the Third Amended Complaint, procedural due process and violation of the Eighth Amendment.

Def. SJ Mem. at 1. Plaintiffs cross move for summary judgment on liability in their favor on these same two claims. Pl. SJ Mem. at 13-22.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (internal quotation marks and citation omitted). Plaintiffs claim the DRF violates their rights under the Fifth, Eighth and Fourteenth Amendment.

### 1. Procedural Due Process (Fifth and Fourteenth Amendments)

According to Defendants, Plaintiffs cannot demonstrate that the DRF abrogates Plaintiffs' constitutionally guaranteed right to procedural due process in violation of Section 1983. *Id*. at 6-10. To allege a Section 1983 claim based on the denial of procedural due process, which is what Plaintiffs have asserted, a plaintiff must demonstrate that he has a "'protected liberty or property interest,'" and that he was "'deprived of that interest without due process.'" *McCluskey v. Comm'r of Nassau Cty. Dep't of Soc. Svcs*., No. 12-CV-3852, 2013 U.S. Dist. LEXIS 127614, 2013 WL 478094, at *12 (E.D.N.Y. Sept. 5, 2013) (citations omitted). Defendants' motion for summary judgment is addressed to the second prong of this test, arguing that Plaintiff has not been deprived of that interest without due process. Def. SJ Mem. at 6-7. According to Defendants, because each of these Plaintiffs could have proceeded to trial and obtained a judgment of not guilty, but chose not to, they have chosen their own procedural paths rather than pursuing the legal remedies available to them. *Id.* at 10.

Plaintiffs, on the other hand, argue that they are entitled to summary judgment on their procedural due process claim because "[t]hough characterized as a 'fee', this charge is in fact a

non-discretionary penalty imposed merely for having been issued a ticket, and without any adjudication of guilt. '[I]n our system of criminal justice, the state is not permitted to charge the accused for the privilege of having been prosecuted.' *United States v. Libous*, 858 F.3d 64, 67 (2d Cir. 2017)."  Pl. SJ Mem. at 2.  According to Plaintiffs, "the individual motorist cannot dispute the DRF before the TPVA Court whatsoever, the TPVA judges have no discretion not to impose the DRF on dismissed tickets and the motorists are not provided a trial on the DRF itself."[4]  *Id*. at 23.  Accordingly, Plaintiffs argue that "where there is no meaningful opportunity to dispute a penalty being assessed against an individual, there is a due process violation."  *Id*.

The due process clause does not guarantee any particular form of procedure, it protects substantive rights.  *Id*. (citations omitted).  "The fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Jones v. Cty. of Suffolk*, 236 F. Supp. 3d 688, 694 (E.D.N.Y. 2017).  Based upon the undisputed facts offered by both sides the undersigned concludes that the imposition of the DRF for tickets that are dismissed is a violation of procedural due process.

The parties both acknowledge that the DRF is assessed on all dismissed traffic tickets, as well as all findings of guilt following a trial.  Pl. Rule 56.1 Stmt. ¶¶17, 21.  According to Defendants' own interrogatory response, the JHOs do not have discretion to waive the DRF on dismissed tickets. Pl. Rule 56.1 Stmt. ¶39.  Additionally, as noted by Plaintiffs, no trial is conducted by the TPVA on the DRF, only on the underlying violation.  Yet, Defendants admit

---

[4] Plaintiff also argues that once a dismissal occurs the Defendants must be returned to the situation as it existed before the ticket was issued. *Id.* at 15. Plaintiffs argue that "[c]osts, fees, and restitution, . . ., must be tied to a valid conviction, absent which a court must return the defendant to the status quo ante.'" *Nelson*, 581 U.S. at 132." *Id*. at 15.  Because the "language of the DRF itself makes it clear that the DRF (a penalty) will be imposed unless the defendant-motorist is found not guilty at trial" it is contrary the standard presumption of innocence. *Id.* at 17.

that NY VTL § 376- a(4) allows for the dismissal of certain tickets upon submission of proof of repair and also admit that the TPVA can offer dismissal of tickets as a unilateral courtesy to motorists and in both circumstances the DRF is assessed.  Pl. Rule 56.1 Stmt.  13-15.  However, as recognized by the Supreme Court in *Nelson,* the state "may not presume a person, adjudged guilty of no crime, nonetheless guilty enough for monetary exactions." *Nelson*, 581 U.S. at 135-136.  Requiring the payment of the DRF upon dismissal of the ticket, without any provision to challenge the assessment violates due process.

Here, the motorist is given no opportunity to challenge the DRF short of proceeding to trial on the merits of the underlying ticket because the JHO has no discretion to waive payment of the DRF.[5]  Thus, if the JHO offers to dismiss the ticket, in order to avoid payment of the DRF the motorist must reject the offer of dismissal and proceed to trial on the merits of the underlying ticket.  There is no meaningful opportunity to challenge just the DRF.

With respect to Plaintiff Dubin, he was issued a ticket for a defective tail light and provided notice pursuant to NY VTL § 376-a, advising him that if the defect was corrected by sunset of the following business day after the ticket was issued, the charge would be dismissed. Pl. Rule 56.1 Stmt.  ¶ 68.  Plaintiff Dubin provided proof of repair to the TPVA and requested dismissal of the charge.  Def. Rule 56.1 Stmt. ¶ 12.  There was no indication on the ticket itself advising him that he would be required to pay the DRF to obtain a dismissal.  *See* ECF No. 141, Ex. BB, Ex. DD, and April 2019 Decision at 5.  In the April 2019 Decision, Judge Bianco held that, with respect to Plaintiff Dubin, in light of the holding in *Nelson v. Colo*., 581 U.S. 128 (2017), Plaintiff Dubin had asserted a plausible due process violation because after following the

---

[5] Plaintiffs claim that as written, the DRF does not attach until after the dismissal has occurred, citing to Exhbit N and Pl. Rule 56.1 Stmt. ¶¶ 25-26. *See* Pl. SJ Mem. at 17, 23.  Neither the statement of undisputed facts nor the underlying exhibit support this statement, so it shall be disregarded by the Court.

procedure specified by NY VTL § 376-a Plaintiff is left with no ability to challenge the DRF. April 2019 Decision at 6. Judge Bianco further acknowledged that a unilateral dismissal would also "implicate a procedural due process problem because that would leave him with no ability to challenge." April 2019 Decision at 11.[6]  In *Nelson*, the Supreme Court held that the state "may not presume a person, adjudged guilty of no crime, nonetheless guilty enough for monetary exactions." *Nelson*, 581 U.S. at 135-136. According to the *Nelson* Court, "[c]osts, fees, and restitution, . . ., must be tied to a valid conviction, absent which a court must return the defendant to the *status quo ante*.'" *Nelson*, 581 U.S. at 132.

In their Reply Memorandum in Further Support of Motion for Summary Judgment, Defendants attempt to distinguish *Nelson* by arguing that the holding of *Nelson* does not apply here because neither of the named Plaintiffs proceeded to trial. Def. Reply SJ Mem. at 6. However, Judge Bianco has already determined that *Nelson* does apply in this action, particularly with respect to Plaintiff Dubin and that ruling remains law of the case.[7]  *See* April 2019 Decision at 6 ("[h]aving looked at it more carefully, under those circumstances, I think a plausible claim exists especially in my -- of the *Nelson v. Colorado* case that this is a plausible due process

---

[6] In the September 2017 Decision, Judge Bianco found that the availability of an Article 78 proceeding (post-deprivation procedure), coupled with Plaintiffs' ability to go to trial on the merits of the ticket (pre-deprivation procedure) was constitutionally adequate to satisfy procedural due process. January 2017 Decision at 21. In the April 2019 Decision, Judge Bianco determined that the pre-deprivation procedure failed because Plaintiff Dubin was not given notice of the DRF until after he requested dismissal. April 2019 Decision 9-10. The April 2019 Decision does not discuss the availability of an Article 78 proceeding.

[7] The law-of-the-case doctrine requires "that when a court has ruled on an issue, that decision should generally be adhered to ... in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983). The "doctrine is premised on the principle that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Tri-Star Pictures, Inc. v. Leisure Time Productions, B.V.*, No. 88-CV-9127, 1992 U.S. Dist. LEXIS 15232, 1992 WL 296314, at *2 (S.D.N.Y. Oct. 6, 1992) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.), cert. denied, 377 U.S. 934, 84 S. Ct. 1338, 12 L. Ed. 2d 298 (1964)). Although "the doctrine of the law of the case is not an inviolate rule," *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (quoting *United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982)), the doctrine generally controls "unless 'cogent' and 'compelling' reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

violation"), at 7 ("I have looked carefully at *Nelson v. Colorado* and I believe under these circumstances this case could fall within the analysis of the Supreme Court in *Nelson v. Colorado*).  Defendants have not presented any argument persuading the Court to stray from Judge Bianco's ruling.  Defendants have not set forth any facts indicating that Plaintiff Dubin had a meaningful opportunity to be heard before the imposition of the DRF, particularly since the JHO has no discretion to waive the DRF.  Thus, to the extent the DRF is imposed upon a motorist following a dismissal in compliance with NY VTL § 376-a the Court finds that the DRF results in a procedural due process violation.

With respect to Plaintiff Alston, he appeared before JHO Philip Milone on February 16, 2016, to resolve all of his outstanding tickets.  *Id*. at ¶ 87.  At this hearing, Plaintiff Alston plead guilty to four of the violations, and the remaining three were dismissed.  For each of the three tickets which were dismissed, the TPVA charged Plaintiff Alston $70 - the DRF fee ($45), a $10 collection fee, and $15 deferred payment fee, resulting in a total of $210 for three dismissed tickets.  *Id*. at ¶ 89.  There is no indication in the transcript of the hearing before the JHO that there was a plea deal or plea agreement made by Plaintiff Alston.  *Id*. at ¶ 90.  However, there is no testimony offered by Plaintiff Alston addressing his understanding with respect to his obligation to pay the DRF on the tickets which were dismissed.  Meaning it is unclear whether Plaintiff Alston agreed to the imposition of the DRF as part of the bargained for settlement.  However, even if Plaintiff Alston understood that the payment of the DRF was a condition of the dismissal of the three tickets, he was without recourse to challenge the assessment of the DRF other than proceeding to trial on the underlying infractions.  The JHO had no discretion to waive the fee and there was no procedure in place to allow him to challenge the DRF.

16

Accordingly, the undersigned respectfully recommends the Defendants' motion for summary judgment on Plaintiffs' claim for a violation of the Fifth and Fourteenth amendment be denied and Plaintiffs' motion for summary judgment on Plaintiffs' claim for a violation of the Fifth and Fourteenth Amendment be granted.

### 2. Excessive Fine Clause

Defendants also move for summary judgment on Plaintiffs' claim that the DRF violates the Eighth Amendment.  Def. SJ Mem. at 11-12.  Defendants argue that the alleged amount in controversy, Forty-Five ($45.00) Dollars per violation for Alston and Thirty ($30.00) Dollars for Dubin, cannot be said to be grossly disproportionate and thus are not of constitutional significance because the touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S. Ct. 2028, 2036, 141 L. Ed. 2d 314 (1998).  Plaintiffs also seek summary judgment on their claims for violation of the Eighth Amendment, arguing simply that since the DRF was imposed without a finding of guilt a per se violation of the Eighth Amendment has occurred.  Pl. SJ Mem. at 7.

The Second Circuit applies a two-step inquiry to decide "whether a financial penalty is excessive under the Eighth Amendment." *Cassidy v. Rodriguez*, No. 21-2657, 2023 U.S. App. LEXIS 2020 (2d Cir. Jan. 26, 2023) (quoting *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016) and citing *United States v. Bajakajian*, 524 U.S. 321, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998)). "First, a court must consider whether the payment or forfeiture at issue constitutes a 'fine,' meaning that it is punitive in nature and not 'purely remedial.'" *Farina v. Metro. Transportation Auth.,* 409 F. Supp. 3d 173, 194 (S.D.N.Y. 2019) (quoting *Viloski*, 814 F.3d at

109). "Second, a court weighs four factors to determine whether the fine is 'grossly disproportional' to the underlying offense." *Id*. (quoting *Viloski*, 814 F.3d at 110). These factors include: "(1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct." *Viloski,* 814 F.3d at 110. "Ultimately, whether a fine is excessive 'involves solely a proportionality determination.'" *Farina*, 409 F. Supp. 3d at 194 (quoting *Viloski*, 814 F.3d 111).  "A penalty 'is unconstitutionally excessive if it is grossly disproportional to the gravity of a defendant's offense.'" *Id*. at 199 (quoting *Viloski*, 814 F.3d 111).  The burden is upon Plaintiffs demonstrate the unconstitutionality of the fines.  *See Viloski*, 814 F.3d at 109.

In the September 2017 Decision Judge Bianco denied Defendants' motion to dismiss the excessive fines claim on the grounds that "defendants are mistaken to contend that for a sanction to be a 'fine,' it must be the result of a 'criminal or quasi-criminal proceeding from which there was a finding of guilt or innocence.'"  September 2017 Decision at 32.  According to Judge Bianco, "both federal and New York State courts have found that administrative and other civil penalties satisfy the first part of the test delineated above, even if they bear no direct relationship to a criminal prosecution."  *Id.*; *see also Brown v. Transurban USA. Inc*., 144 F. Supp. 3d 809, 837 (E.D. Va. 2015) ("civil fines typically do not fall within the scope of the Eighth Amendment prohibition" against excessive fines, "'[b]ut where a civil sanction can only be explained as serving in part to punish, then the fine is subject to the Eighth Amendment'") (quoting *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 387 (4th Cir. 2015)).  In further support of Judge Bianco's conclusion, in connection with Plaintiff's motion for summary judgment,

Plaintiff has provided statements from Judge Marks (on behalf of the TPVA) confirming that the DRF was to "deter drivers" from breaking the law.  Pl. Rule 56.1 Stmt. at ¶ 30.  Judge Marks also confirm that the purpose of the DRF fee was to decrease recidivism of traffic infractions. *Id*. at ¶ 32.  Additionally, as noted in the Staff Summary, the dismissal fee (a/k/a "the Administrative Fee") was being charged on dismissed tickets to prohibit repeat offenses.  *Id*. at ¶ 4.  In light of this testimony the Court concludes the DRF is punitive in nature and not purely remedial, and the first prong of the test announced in *Viloski*, 814 F.3d at 109 is satisfied.

Typically, the Court would turn next to the second step in the Excessive Fine analysis, -- whether the DRFs were unconstitutionally excessive and applying the *Bajakijian* factors to find whether they were grossly disproportional to the fines imposed.  *See, e.g., Oles v. City of New York*, No. 22-1620-cv, 2023 U.S. App. LEXIS 11074, 2023 WL 3263620, at *2 (2d Cir. May 5, 2023) (applying the *Bajakijian* factors in a case in which no criminal conduct is alleged).  However, here, no fines were imposed because the tickets were dismissed.  Any consideration of the proportionality of the fine imposed must necessarily start at the essence of the violation.  The DRF challenged here is only assessed after a dismissal of the ticket, which means there is no violation to begin with.  Where there is no violation there can be no penalty.  *See Enmund v. Florida*, 458 U.S. 782, 800 (1982) ("the Court has found criminal penalties to be unconstitutionally excessive in the absence of intentional wrongdoing"); *Ingraham v. Wright*, 430 U.S. 651, 671 n40 (1977)("the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt"); *Cohen v. New York*, 69 Misc.2d 189, 193, 329 N.Y.S.2d 596 (Civ.Ct.1972) ("it is axiomatic that absent a finding of guilt, there may not be an exaction or punishment of any kind").

Defendants argue that Courts considering parking, traffic and related fines and charges routinely find that such fines are not constitutionally excessive. Def. SJ Mem. at 11. To support this proposition, Defendants rely on *Shibeshi v. City of New York,* No. 11 CIV. 4449 (LAP), 2011 WL 13176091, at *2 (S.D.N.Y. Sept. 21, 2011), aff'd, 475 F. App'x 807 (2d Cir. 2012) and *Popescu v. City of San Diego*, No. 06CV1577-LAB LSP, 2008 WL 220281, at *4 (S.D. Cal. Jan. 25, 2008). However, Judge Bianco rejected Defendants' reliance on both of these cases in the April 2019 Decision. Specifically, Judge Bianco noted that both of these cases based their holding on the proportionality of the fee and did not set a de minimis amount necessary to challenge the constitutionality of the fee as suggested by Defendants.

Accordingly, the undersigned respectfully recommends that Defendants motion for summary judgment on Plaintiffs' Section 1983 claim arising out of a violation of the Eighth Amendment be denied, and Plaintiffs' motion for summary judgment on that claim be granted.

### B. Plaintiffs' Motion for Reconsideration

In the September 2017 Decision, Judge Bianco, citing *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 379 (2d Cir. 1995) (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)) held that

> Ripeness, not exhaustion, is the relevant inquiry, and plaintiffs have not suffered a takings violation under the Due Process Clause if they have not attempted to secure compensation via state procedures. Thus, the Court grants defendants' motion to dismiss plaintiffs' unjust takings claim because the SAC does not allege a ripe injury.

September 2017 Decision at 26.[8] In *Williamson County,* the Supreme Court created a two-part test for ripeness. Under the second prong, a property owner was required to seek compensation

---

[8] The claim dismissed by Judge Bianco was set forth in Paragraphs 76-80 of the Second Amended Complaint.

for an alleged taking before proceeding to federal court. *Williamson County*, 473 U.S. at 194.

Judge Bianco relied upon this requirement in dismissing Plaintiffs' Takings Clause claim.  The

Supreme Court, in *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019), has overruled this requirement

on the ground that it "impose[d] an unjustifiable burden on takings plaintiffs [and] conflict[ed]

with the rest of our takings jurisprudence." *Knick*, 139 S. Ct. at 2167.

Plaintiffs are seeking reconsideration of the dismissal of their Takings Clause claim,

based upon the Supreme Court's partial overruling of *Williamson Cnty.* with its decision in

*Knick*.  Pl. SJ Mem. at 2-3.  According to Plaintiffs, in light of *Knick*, "a plaintiff is no longer

required to exhaust state remedies before bringing a Takings Clause claim in Federal Court." *Id*.

at 3.  Defendants have not responded to Plaintiffs' motion for reconsideration in connection with

the instant motion, however, Defendants did oppose Plaintiffs' request for a pre-motion

conference filed in June 2019 seeking reconsideration of the September 2017 Decision.[9]  ECF

No. 102.  At that time, Defendants argued that even if the Court were to grant the motion for

reconsideration based upon *Knick*, the Court should nevertheless deny Plaintiffs' motion to file

an amended complaint because any amendment would be futile.  Defendants argued that the

imposition of an obligation to pay money does not give rise to a Takings Clause Claim under the

Fifth Amendment.  *Id*. at 2.

In light of the Supreme Court's ruling in *Knick*, 139 S. Ct. 2162 the undersigned

respectfully recommends Plaintiffs' motion for reconsideration be granted and the Takings

Clause claim be reinstated.  However, rather than allowing the filing of the Fourth Amended

Complaint, as requested by Plaintiffs, the undersigned respectfully recommends that the

---

[9] At a conference on August 7, 2019, Judge Azrack advised the parties that "there will be no motion practice at this time on the Takings claim, which the parties can address at summary judgment."  ECF No. 105.

Paragraphs dismissed by the September 2017 Decision be deemed reasserted in the Third Amended Complaint.[10]

### C.  Plaintiffs' Motion for Summary Judgment

In addition to the cross motions for summary judgment on Plaintiffs claims for violation of the Excessive Fines Clause and the Due Process Clause, Plaintiffs also move for summary judgment on their Takings Clause Claim.  Pl. SJ Mem. at 10-13.  Defendants have not responded to this portion of Plaintiffs' motion.  Generally, where the party opposing summary judgment fails to respond to the argument made the claim is deemed abandoned.  *See Banyan v. Sikorski*, No. 17-cv-4942, 2021 U.S. Dist. LEXIS 100567, 2021 WL 2156226, at *2 (S.D.N.Y. May 27, 2021) ("Such a failure to respond to arguments set forth in a moving party's brief is an adequate ground for a Court to deem the claim abandoned."); *Geller v. Hochul*, No. 20 Civ. 4653 (ER), 2021 U.S. Dist. LEXIS 183367, 2021 WL 4392521, at *16 (S.D.N.Y. Sept. 24, 2021) (deeming plaintiffs' failure to address one of defendants' arguments constituted a waiver); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) ("In [the plaintiff's] brief, [the plaintiff] did not raise any arguments opposing Defendant's motion regarding these two claims. Accordingly, the Court deems [the plaintiff's] first and third claims abandoned.").  Here, however, Plaintiffs bear the initial burden of providing the basis for the motion and of identifying the evidentiary materials, if any, supporting the moving party's position. *See Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 559 (2d Cir. 1997).  Accordingly, the Court will consider Plaintiffs' motion on the merits.

---

[10] Attached to Plaintiffs' motion for reconsideration and summary judgment is Plaintiffs' proposed Fourth Amended Class Action Complaint ("FAC").  ECF No. 141-4.  The FAC contains a single claim for violation of Section 1983 and adds Paragraphs 73 through 78 alleging that the DRF violates the Takings Clause of the Fifth Amendment. *Id*. The TAC contained two causes of action and contained additional paragraphs.  Plaintiffs have not filed a motion seeking permission to file the FAC.

"The Takings Clause of the Fifth Amendment provides that no 'private property shall be taken for public use, without just compensation.'" *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 162 (S.D.N.Y. 2020) (quoting U.S. Const. Amend. V). "The law recognizes two species of takings: physical takings and regulatory takings." *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006).   Plaintiffs here contend the assessment of the DRF amounted to a physical taking, arguing that "even nominal amounts of money have protections under the Takings Clause."  Pl. SJ Mem. at 10 (citing *Philips v. Wash. Legal Found.*, 524 US. 156, 162 (1998)). Plaintiff argues that "[w]here it is money that is taken, a court should use the per se rule to examine if there was a violation of the Takings Clause."  *Id.* (citing *Brown v. Legal Found.*, 538 U.S. 216, 234 (2003)).

However, "the mere imposition of an obligation to pay money does not constitute an unconstitutional taking of property." *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1339-40 (Fed. Cir. 2001) (affirming dismissal of takings claim relating to NWPA fees); *see also Canal Electric*, 65 Fed. Cl. at 655 (rejecting takings claim based on fees under NWPA); *Banks v County of San Mateo*, 2017 U.S. Dist. LEXIS 127347, 2017 WL 3434113, at *13 (N.D. Cal. Aug. 10, 2017) (same).  In *Easter Enterprises v. Apfel*, the Supreme Court agreed that simply imposing an obligation to perform an act, such as making a payment, does not take property in a constitutional sense. *See* 524 U.S. at 539-47 (Kennedy, J.); *id.* at 554-58 (Breyer, J.). "The Supreme Court, however, has never held that the Takings Clause applies to the creation of "an ordinary liability to pay money." *Id.* at 554 (Breyer, J.).  "Although the Second Circuit has yet to confront the issue, other Circuit Courts consistently have followed the conclusion reached by the majority of the Justices in *Eastern*—'that an obligation to pay [undifferentiated, fungible] money cannot constitute a taking.'" *Moorer v. U.S. Bank N.A.*, No. 17-CV-56 (VAB), 2018 U.S. Dist.

LEXIS 14067, at * 19, 2018 WL 587319 (D. Conn. Jan. 29, 2018) (quoting *W. Virginia CWP Fund v. Stacy*, 671 F.3d 378, 386-87 (4th Cir. 2011), as amended (Dec. 21, 2011) (collecting cases); *Vizio, Inc. v. Klee*, No. 3:15-cv-00929 (VAB), 2016 U.S. Dist. LEXIS 44761, 2016 WL 1305116, at *17 (D. Conn. Mar. 31, 2016) ("[b]ecause the E-waste Law merely requires payment of fungible, undifferentiated monies, there is no cognizable Fifth Amendment property interest, and neither the Takings Clause nor the analogous provision of the Connecticut Constitution are implicated"); *see also McCarthy v. City of Cleveland*, 626 F.3d 280, 285 (6th Cir. 2010) (concluding that monetary traffic penalty was not an unconstitutional taking because "a taking does not occur when the statute in question imposes a monetary assessment that does not affect a specific interest in property"); *id*. at 286 ("Because the challenged ordinance does not seize or otherwise impair an identifiable fund of money, Plaintiffs have failed to plead a cause of action under the Takings Clause.").

Accordingly, the undersigned respectfully recommends that Plaintiffs' motion for summary judgment on their claim Takings Clause Claim be denied and recommends that such claim be dismissed.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson,*

*Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated:  Central Islip, New York
        February __, 2024


                                _____/s/_____
                                ARLENE R. LINDSAY
                                United States Magistrate Judge